GEORGE SINCLAIR, plaintiff in error, *against* JAMES JACK-
SON, *ex. dem.* MOSES FIELD, defendant in error.

An enrolled decree of foreclosure, with the master's deed to the purchaser, are, of themselves, evidence sufficient to entitle him to recover in ejectment, without producing the original mortgage, or proving it, otherwise than by the decree.

A stranger, or one not a party, cannot object to such evidence in an ejectment against him;

For the decree does not affect his rights.

An objection that a law is void, as being contrary to the constitution of the U. S., because it seeks to divest the rights of remaindermen, cannot be successfully urged by a stranger to the remainder, as void also in relation to the particular estate. The objection can be made by the remaindermen only.

Whether a private statute, and order in chancery thereon, expressly seeking to divest and transfer the vested rights of infants in land, are unconstitutional or void? *Quere.*

A conveyance or mortgage in fee, made by one having only a life estate, is valid for his life, though void for the excess.

Whether, under a general leasing power, a lease can be made to commence *in futuro*, after the expiration of a subsisting lease given under the same power? *Quere.*

If it can, yet both terms must not exceed the time or term limited in the power.

Such excess would make it void at law *in toto;* though it might be good in equity *pro tanto:*

An equitable title is not available in an action of ejectment, to defeat the legal title. The latter alone is in question.

Whether trustees can lease, without express power given them by the instrument creating the trust? *Quere.*

Whether trustees can act by attorney? *Quere.*

It seems they may act by attorney, if they restrict him to the conditions imposed upon themselves.

*But they must all join, if alive, in executing the trust, whether this be in person, or by delegation to an attorney.

Where two out of three trustees demised by attorney, *held*, that no interest passed; not even the moieties of the lessors.

Where several persons are appointed trustees, or have power to act for a mere private (not a public) purpose, they must all join in executing the trust or power.

This rule applies as well to trusts coupled with an interest, or surviving trusts as to naked powers.

And if this rule be not complied with, the act is merely void, not voidable only; and a stranger may object the defective execution.

[*544]

ALBANY,
Dec. 1826.

Sinclair
v.
Jackson.

A stranger may object to a void instrument.

Though a lease or conveyance by one who is joint tenant in his own right, may operate on his moiety, the rule does not apply to joint tenants who are trustees.

They cannot act separately, unless specially authorized by the instrument creating the trust.

Where an attorney professes to act with power, having none, he is personally liable.

Otherwise, where he has power, but only errs in its execution.

Estoppel is where a man admits an act or deed, by reciting it in an instrument executed by him, or by acting under the deed.

But he is not estopped, if the truth appear by that which would otherwise work an estoppel.

It seems that an estoppel of a party as to a previous deed, by a recital of it in a subsequent one, is only where both deeds are in the same right: not where he executes one in his own, and one in the right of another.

Though equity will supply a defect in the execution of a power; yet a right cannot, therefore, be set up under it at law.

The remedy is in equity only.

A mortgage and master's deed on foreclosure being absolute on their face, parol evidence cannot be given to show that they were taken subject to a lease; such evidence being a contradiction of the deeds.

Nor would such a circumstance, if properly appearing, operate to confirm a void lease.

A lease merely void, is incapable of confirmation at law.

ON error from the supreme court. The action in the court below was ejectment by Jackson, on the demise of Field, against Sinclair, for lot 320 of the lands called the Church farm, situate in the city of New-York. The demise in the declaration was laid on the 2d day of May, 1820.

The cause was tried at the New-York sittings, on the 12th day of June, 1822, before WOODWORTH, J., when a bill of exceptions was taken, on which the cause came to this court, after having been passed upon in usual form at the bar of the supreme court.

[*545]       *The bill disclosed the following state of facts: It was admitted that Mary Clarke was seised in fee of the premises in question, both at the date of her will, and at the time of her death. The plaintiff below then gave in evidence her will, dated April, 1802, and proved that she died shortly after. By her will, she devised the premises in question, (*inter alia*,) to Benjamin Moore and Charity

his wife, and Elizabeth Maunsell, and their heirs forever, as joint tenants, and not as tenants in common, "To have and to hold the said hereby devised premises to the said Benjamin Moore and Charity his wife, and Elizabeth Maunsell, and to the survivor or survivors of them, and the heirs of such survivor, as joint tenants, and not as tenants in common, in trust to receive the rents, issues and profits thereof, and to pay the same to the said Thomas B. Clarke, during his natural life; and from and after the death of the said Thomas B. Clarke, in further trust, to convey the same to the lawful issue of the said Thomas B. Clarke, living at his death, in fee; and if the said Thomas B Clarke shall not leave any lawful issue at the time of his death, then in further trust and confidence, to convey the said hereby devised premises to my grandson, Clement C. Moore, and to his heirs, or to such person in fee as he may by will appoint, in case of his death prior to the death of the said Thomas B. Clarke." This will appointed, in a subsequent and concluding clause, Benjamin Moore and Charity his wife, Elizabeth Maunsell, Clement C. Moore and Thomas B. Clarke, executors and executrices.

The plaintiff below also gave in evidence three successive acts of the legislature of this state, passed April 1st, 1814, 24th of March, 1815, and 29th of March, 1816. The first act recited the above provisions of the will, that the devised premises were nearly unproductive, and incapable of present improvement, so as to support Clarke and his family, that the trustees had agreed in writing under their hands and seals, under date of January 11th, 1814, to all such acts as the legislature might pass for the benefit of Clarke, his issue, heirs and assigns, in and concerning *the premises; and consented and desired that other trustees might be substituted in their place, and they be discharged; and that Clement C. Moore, the contingent remainderman, had in like form consented to like legislative interference; and then enacted, that on Clarke's application to the court of chancery, that court might substitute one or more trustees to execute the trusts of the will, instead of the old trustees, who were by the act discharged; and that the

ALBANY,
Dec. 1826.

Sinclair
v.
Jackson.

[*546]

ALBANY,
Dec. 1826.

Sinclair
v.
Jackson.

court of chancery might change the trustee or trustees to be appointed, in like manner as it had power to do of other trustees appointed by that court. The act then provided that the trustees might partition certain devised property lying in the city into equal parts, one half to be held upon the trusts of the will, and the other, with the premises in question, to be sold, and the proceeds secured in a certain manner so as to yield an annual pecuniary income to Clarke during his life, and another income to be paid to him for the benefit and maintenance of his family, and the education and support of his children; the principal sum to be held upon the trusts of the will. The trustees or a majority, were also authorized by the act, during Clarke's life, to put on lease, for not exceeding 21 years, at the best rents, all or any of these lands, the demises to take effect from their date, and not *in futuro.* But no lease to be made without Clarke's consent. At his death, the terms to be held under the trusts of the will. In all other respects, the trustees to hold under the trusts of the will, and be amenable to the court of chancery.

The act of March, 1815, recited that Clement C. Moore, the remainderman, had, on the 21st of February, 1815, released to Clarke in fee all his interest in the above devised premises, whereby they became vested in fee in Clarke and his children; that Clarke had petitioned for an amendment of the former act in relation to the interests of Clement C. Moore and certain trusts mentioned in the former act. The latter statute then repealed all the former, which related to income from the sales, and the creation and duty of trustees by the court of chancery; and transferred all *their power to Clarke himself, directing him to apply the whole of the interest and income of the property to the maintenance and support of his family, and the education of his children. That he should not sell until he had procured the assent of the chancellor, who should, at the time of giving such assent, direct the mode in which the proceeds should be vested in Clarke as trustee, who should account to the chancellor annually for the principal, who should have power to remove Clarke for mal-administration

[*547]

in his trust, and appoint another trustee subject to such rules as he should prescribe.

The act of March, 1816, authorized Clarke, under any previous or subsequent order of the chancellor, to mortgage or sell such of the premises as the chancellor had permitted or should permit him to mortgage or sell as trustee under the will of Mary Clarke, and apply the money raised by such mortgage or sale to the purposes required or to be required by the chancellor, under the previous acts.

The plaintiff below then gave in evidence a decretal order of the chancellor, of the 3d of July, 1815.  This recited a petition of Clarke, which set forth the will and the two first acts: and that his income from the devised premises was his sole resource for maintenance of himself and family; that it was inadequate to that end; and that he had necessarily contracted large debts, (*inter alia,*) one of $4,400 to the Manhattan Company.  It then prayed a sale: and that Clarke's debts might be paid out of the proceeds, the residue to be holden in trust as the chancellor should direct.  The order then recited a reference to a master, who had reported debts to $5,400, beside the debt due to the Manhattan Company; that the other facts in the petition were true; that certain of the premises had been mortgaged by Clarke, as the attorney of the trustees in the will, to secure the Manhattan Company, who had consented to a sale, on being continued secure.  The order, therefore, directed a sale of certain of the devised premises, including the premises in question, the net proceeds to be applied to the payment of the petitioner's *debts then owing and to be contracted, for the necessary expenses of his family, with costs, &c. , the residue to be invested in the manner and on the trusts directed.

[*548]

The plaintiff below then gave in evidence another decretal order of the court of chancery, of the 30th of May, 1816, reciting the former order, and a petition of Clarke, which did not mention the premises in question, referring to the last act of the legislature, and stating the difficulty of effecting sales.  This last order authorized Clarke to

mortgage instead of selling all or any of the lands mention-
ed in the former order, for securing the sum or sums of
money to be lent or advanced to him or for his use by the
Manhattan Company, or others, with such debts as were al-
ready owing by him to such lender or lenders; the moneys
to be procured and debts to be extinguished by mortgage,
to be appropriated and adjusted in the same manner as if
the sales directed by the former order had succeeded, and
the money had been raised by them. The order gave
liberty to apply for further directions.

The plaintiff below then gave in evidence another order
of the chancellor of the 8th of March, 1817, and another
of the 15th of March, 1817, extending the right of Clarke
to mortgage or sell, to other parts of the devised premises,
embraced by the acts and former orders, but not including
the premises in question, on the same mortgage or sale be-
ing approved by a master; to apply the proceeds in pay-
ment of his debts, and invest the residue, if any, in such
manner as he should deem proper, to yield an income for
the support of his family.

The plaintiff below then offered in evidence an exem-
plification of an enrolled decree of foreclosure of January
24th, 1820. The bill recited that Clarke was, on the 16th
of January, 1818, indebted to Jonas Mapes and James
Oakley, merchant tailors, complainants, in $1,000 for ne-
cessary wearing apparel, furnished from 1815 forward;
that, to secure this sum, he, and James A. Hamilton, mas-
ter in chancery, as his trustee, on the 16th of January,
1818, mortgaged the premises in question in fee to the
complainants. The mortgage, as set forth in the bill, re-
cited the will and the order of the chancellor of the 15th
of March, 1817, on which it professed to be founded.
This bill was answered by Hamilton and one Kennedy, a
junior mortgagee, and taken *pro confesso* as to Clarke.
The answers admitted the execution of the complainant's
mortgage by Clarke and Hamilton, stating that it was ap-
proved by the latter as master.

The enrolled decree was objected to by the counsel for
the defendant below, as incompetent evidence, *per se*, and

[*549]

it was insisted that the original mortgage should be produced and proved. The objection was overruled, and exception taken.

The master's deed to the lessor of the plaintiff below, as purchaser under the decree, was then offered in evidence, and objected to on the same gronnd. The objection was overruled and exception taken. Both the enrolled decree and master's deed were accordingly read in evidence. The plaintiff below rested.

The defendant below then gave in evidence a sealed power of attorney, dated January 15th, 1805, executed by the three trusteees appointed by the will, to Clarke, which, after reciting the devise of the lands, &c., by Mrs. Clarke to B. Moore and his wife, and Elizabeth Maunsell, executors of her (Mrs. C's.) last will and testament, in trust, &c., proceeded thus: "Now know ye, that we, the said Benjamin Moore, Charity Moore and Elizabeth Maunsell, executors as aforesaid, do hereby empower and authorize the said Thomas B. Clarke to lease, let and demise the same to such person or persons, and for any term of years not exceeding 21 years, and at such annual rents as he shall think fit, and to receive the rents, issues and profits thereof to his use, and receipts and acquittances to give therefor in our names; and also, to execute and seal and deliver good and sufficient leases for the same, hereby ratifying," &c.

The defendant below also gave in evidence another power of attorney dated September 30th, 1808, under the hands and seals of Benjamin Moore and Charity Moore his wife, but not executed by Elizabeth Maunsell, though it appeared she was alive at its date, and for many years *afterwards. This power contained similar recitals with the former, and then proceeded in the same form to empower and authorize Clarke to lease, let or demise the land devised, or any part, to such person or persons, and for any term of years not exceeding 21 years, or during his life, and at such annual rents as he should think fit. And further, in their names, but to his own use, to sell, assign, transfer and set over his interest in the same, unto any

[*550]

person or persons, and for any term of years not exceeding 7 years, or during his natural life, and on such terms as he should think fit, together with the rents, issues and profits thereof.

. The defendant below then gave in evidence an indenture of lease of the premises in question, made by Clarke, as attorney for Moore and wife. This lease was dated the 8th of March, 1813, and was in the name of B. Moore and wife, acting trustees appointed by the will of Mrs. Clarke, (by their attorney, Thomas B. Clarke,) as lessors, and George Sinclair, the defendant below, lessee. It recited at large a former lease by indenture of the same premises, made the 30th day of July, 1810, between Moore and wife, acting trustees, &c., (as in the last lease,) by their attorney, Thomas B. Clarke, to the same George Sinclair, from the 1st of May, 1810, for 10 years. The last indenture of lease then demised to Sinclair the same premises from the 1st of May, 1820, *in futuro*, when the recited lease should expire, for the term of 14 years longer. These leases contained the usual covenants for quiet enjoyment, &c. There was a note at the end of the last indenture, signed by the parties, stating that this lease was granted by virtue of a power from the court of chancery of the state of New York, to lease the premises for 21 years. Both leases were at an annual rent of $450.

The defendant below also read in evidence an assignment, dated April 27th, 1813, indorsed on this lease, executed by Clarke in his own name, reciting that he was the owner for life of the lot, and owned the rents, by which, for the consideration paid of $950, he assigned to the lessee, *George Sinclair, all the rents due for the term of 14 years, and released these to Sinclair.

[*551]

It was admitted by the counsel for the plaintiff below, that Clarke was still living at the time of the trial.

The above pieces of documental evidence were received subject to an objection by the plaintiff below, raised at the time of their being offered respectively.

The defendant below farther gave in evidence an original decree of the court of chancery, made Feb. 22d, 1813.

This decree was in a case between Thomas B. Clarke, as complainant, against the trustees under the will, with Clement C. Moore, and the children of the complainant, by their guardian, Clement C. Moore. This decree stated it had appeared, that if the premises devised in trust by Mary Clarke should be leased in the manner mentioned in the bill of complaint, they would be greatly and permanently increased in value, not only to the benefit of the complainant, but of those in remainder; that the children had submitted themselves to the judgment of the court, and Clement C. Moore had agreed that the premises should be leased in the manner mentioned in the bill of complaint; and the trustees had stated by their answer their readiness to do whatever the court should direct, being indemnified by the decree of the court. It was, therefore, decreed that the trustees and the survivors and last survivor of them, whenever fitting and proper opportunities should offer, should, with the assent and approbation of the complainant, cause the premises to be leased for a term not exceeding 21 years, provided such lease or leases should not interfere with existing leases.

It was farther proved on the part of the defendant below, that Mapes and Oakley, the mortgagees who foreclosed, had notice of the 14 year lease at the time of their mortgage being executed, and that Field, the lessor of the plaintiff below, had offered the defendant below, at different times, $5,000 and $5,500 for his lease, which he declined, charging $7,000; that a fair rent was at that time about $1,200 a year. The auctioneer who sold the premises to Field under the decree, swore that they were sold *subject to the lease; that if not subject to the lease, they were worth three times what they sold for.          [*552]

All this parol evidence was received subject to an objection to its competency on the part of the plaintiff below.

His honor, the judge, charged in favor of the plaintiff below, for whom the jury found; and the supreme court sustained the charge at the bar, the reasons being assigned as follows, by

SAVAGE, Ch. J. Mary Clarke, by her last will, dated April 6, 1802, devised the premises in question to Benjamin Moore and Charity his wife, and Elizabeth Maunsell; as joint tenants, in trust to pay the rents and profits to Thomas B. Clarke during his life, and after his death, to his lawful issue; if no issue, then to her grandson, Clement C. Moore, and his heirs.

On the first of April, 1814, the legislature, with the consent of the trustees and Clement C. Moore, and on the petition of Thomas B. Clarke, authorized the court of chancery to discharge the trustees and appoint others. They also authorised the trustees to sell the premises, or lease them for 21 years, or the life of Thomas B. Clarke.

On the 24th March, 1815, another act was passed, authorizing Thomas B. Clarke to do what by the former act the trustees were authorized to do, but not to sell without the chancellor's consent.

The act of 29th March, 1816, authorizes Thomas B. Clarke to mortgage or sell with the chancellor's consent. The chancellor, by his decree of 1815, consented to a sale.

By a decree of 1816, he consented that Thomas B. Clarke should mortgage. Clarke did mortgage, with the assent of a master, to Jonas Mapes and James Oakley, under the foreclosure of which mortgage the lessor of the plaintiff purchased.

The defendant produced and proved a power of attorney from Benjamin Moore, Charity Moore and Elizabeth Maunsell, of January 15th, 1805, to Thomas B. Clarke, authorizing him to lease for 21 years. Also, another power of the 30th September, 1808, by B. Moore *and wife to Thomas B. Clarke, authorizing him to lease for 21 years, or during his life. Also, a lease from Thomas B. Clarke, attorney for B. Moore and wife, acting trustees, &c., to the defendant, for the premises in question, dated the 8th March, 1813, reciting a lease of the 30th July, 1810, for ten years. The premises are let for fourteen years after the expiration of the former lease. When Oakley took the mortgage he knew the premises were leased to

the defendant, and that the lease had ten or twelve years to run. The mortgage was given in October, 1816, and was taken subject to the lease.

The lessor, some years before the trial, sent an agent to the defendant, and offered $5,000 for the lease. The defendant asked $7,000.

The auctioneer who sold the premises at the mortgage sale, sold subject to a lease of fourteen years, of which he gave notice at the sale. The premises were worth three times what they sold for, had there been no lease.

By the will of Mary Clarke, Thomas B. Clarke took an estate for life in the rents and profits of the premises. By the power of attorney of January 15th, 1805, Thomas B. Clark was authorized to lease for twenty-one years; this power was signed by all the trustees. The power of 1808 purported to authorize Thomas B. Clark to lease for twenty-one years, or for his life; this power was executed by two only of the three trustees, and was therefore invalid and conferred no authority. The leases were given under this power. Elizabeth Maunsell never joined, by her attorney, in any of the leases. If two only of the trustees could not lease, these leases conveyed no estate to the lessee.

Trustees have all equal power, interest and authority; they cannot act separately, but must all join both in conveyances and receipts. (1 Cruise's Digest, 533, tit. 12, ch. 4, sec. 36.)

At common law, if a man authorize his executors to sell his lands, and one of them dies before the sale, the others may sell; but if they had been named A, B and C, then the survivors could not sell, because the words of the testator *could not be satisfied. (Co. Litt. 113, a, sec. 169.) Hargrave, in his note on this passage, (note 146,) says: When a naked power is vested in two or more, nominative, without any reference to an office liable to survivorship, as an executorship is, it, without doubt, would be a contradiction of the general rule, to allow the power to survive. (See Cro. Car. 382; Cro. Eliz. 26; 1 Caines' Cases in Error, 16.)

[*554]

ALBANY,
Dec. 1826.
———————
Sinclair
v.
Jackson.

In this case, there is no question that the trust would have survived in case of the death of one of the trustees. (14 John. 553.) This was not a naked power, but coupled with an interest, and the devise to them is expressly as joint tenants, between whom the right of survivorship exists; but the difficulty here is, that all the trustees did not join, all being living.

In *Green* v. *Miller*, (6 John. 39,) this court decided, that in matters of private concern, where power is delegated to a number, all must join.

In *Franklin* v. *Osgood*, (14 John. 553,) a distinction is taken between a naked power and one coupled with an interest. In the former case, the co-operation of all is necessary: in the latter, in the event of the death of one, the power to execute the trust survives; but I find no authority to support a conveyance made by a part of the trustees during their joint lives, unless provision is made that a majority may act. In 3 D. & E. 595, Lord Kenyon lays down the rule, without exception, to be, that trustees in settlements must all join in every act, in order that each may protect the interest he was to guard.

Even if the fact be, that at the time of the trial, Mrs. Maunsell was dead, that will not make the lease valid. It was not valid when executed; and on the 1st April, 1814, at which time Mrs. Maunsell was living, the trustees were, by their own consent, discharged from all authority in relation to their trust. The validity of the lease, therefore, must be tested by the powers of the trustees when they ceased to act. At the death of Mrs. Maunsell, there was no power in her, to survive to her co-trustees; and it *is only upon the principle of survivorship that the lease is supposed to be made effectual by her death.

Subsequent to the execution of the leases, an application was made to the legislature, and the trustees were, by their own consent, and the consent of Thomas B. Clarke and Clement C. Moore, discharged from their trust; and such proceedings were had, that Thomas B. Clarke was authorized to execute the mortgage under which the lessor of the plaintiff claims, so far as the legislature could confer

[*555]

such authority. If any rights are interfered with by the acts of the legislature, they are the rights of the children of Thomas B. Clarke, which are not now before us.

It is no objection to the plaintiff's right of recovery, that the lessor knew of the existence of the lease to the defendant: because, if he knew of its existence, he also knew that it was not the act of all the trustees, and of course conveyed nothing.

If the defendant has any equitable claims, this is not the proper place to enforce them.

In my opinion, the plaintiff is entitled to recover; and such is the opinion of the court.

The reasons now assigned to this court by the chief justice, were substantially as above.

*T. A. Emmet*, for the plaintiff in error. It will not be denied, that a plaintiff in ejectment, if he recovers at all, must recover upon the strength of his own title; and where several matter are necessary in order to establish a complete title, he must prove all those requisites. The plaintiff below did not produce sufficient evidence of title. The exemplification of the proceedings to foreclose was no evidence of title, nor of the matters averred in those proceedings, against the defendant below, who was not a party to the chancery suit. The original mortgage should have been produced, and proved to have been recorded; or that it was filed before the execution of the deed by the master.

*These various defects are not noticed at all by the opinion of the supreme court. " It is a general, if not universal principle, that a suit between two persons shall not bind, or affect a third person, who could not be admitted to make a defence, to examine witnesses, or appear from the judgment." (14 John. 81.) Sinclair had an interest, and should have been made a party, in order to affect him. Nothing was proved in the chancery suit. The whole proceeded amicably. Neither the bill nor the decree, nor the conveyance of the master, is evidence that there ever was a mortgage. No doubt the mortgage, if produced, would

[*556]

have been seen to have contained a clause saving to us our rights. In ejectment founded on a sheriff's deed, the judgment, execution and deed, must all be produced. (*Jackson* v. *Hasbrouck*, 12 John. 213. *Bowen* v. *Bell*, 20 id. ·338.) The analogy is between the judgment and the mortgage. The lien is the origin of the title. It is no answer, to say that we might have produced the mortgage on our part. Such an answer is unavailable even as to a judgment, which must·always be recorded. Here the mortgage was neither registered, nor deposited in court. It is not necessary, in a bill of foreclosure, to set out the mortgage at length, with all its qualifications. At best, this exemplification of the enrolled decree was but secondary evidence, inadmissible till the mortgage should have been proved lost.

Again, the enrolled decree sets out a mortgage by Hamilton as trustee, and Clarke as devisee, and contains no proof of any appointment of Hamilton as trustee; nor was any such proof given by the plaintiff below; nor any proof that Hamilton had authority to mortgage. Clarke had no such authority as devisee; nor was the mortgage executed pursuant to any act of the legislature, or order of the chancellor. Now is the first time when Sinclair could raise this question. It was for the interest of all who were parties in chancery, to let every defect pass *sub silentio.* The order of the chancellor, on which the mortgage professes to be made, does not embrace the premises in question. A previous order authorized their being mortgaged, *it is true; but this order was on the petition of Clarke for power to sell lands other.than those in question, and should be restricted according to the petition. But the power given by this order of the chancellor, if it extended to the premises in question, has not been pursued. The mortgages were to be for securing sums of money to be advanced; and he might couple with this a security for debts already due. The mortgage in question was to secure a debt incurred for wearing apparel. The new loan was a condition precedent to the power of mortgaging. The application of the money was to be under the direction of the court; so that Clarke could not, of his own will, pay what debts he

pleased. The debts were to be proved before the master; and this should be done before the mortgage could be given. This was also a condition precedent. Neither condition being executed, the mortgage was void for this reason. Clarke must be taken, then, to have mortgaged as a mere devisee. (6 Rep. 17, 18.)

But the acts of the legislature, and the orders of chancery under them, were unconstitutional and void. The supreme court say there were no rights to be interfered with by these statutes, except those of Clarke's children. But if they were void as affecting the interests of the children, we, as tenant in possession, may object that all is void. This is not a question of voidable laws, or voidable acts. It might as well be said that we could not object the invalidity of a fine, under which the plaintiff claimed title. A defendant in possession may take every objection which affects the title of the lessor under any conveyance, whether by statute, record, or deed. If the statutes did not affect the children, they did not affect Sinclair. They are void as to him under the constitution of the United States, and indeed, independent of that. (2 Bl. Com. 345. 5 Cruis. Dig. Private Act, tit. 33, § 28 to 33. *Catlin* v. *Jackson*, 8 John. Rep. 520.)

Suppose the first act discharging the trustees, to have its full effect: it changed the real estate into funds; but did not break in upon the principal of Clarke's children. *He next comes to convert it to the payment of his own debts. There was no equivalent for this, except that his children were to be maintained and educated; that is to say, he was to perform a parent's duty. The living out of his children's income was the whole equity of these laws. The acts are thus void in respect to the children, because they interfere with private rights. Such acts could pass no right to anybody.

[*558]

As to Sinclair, the acts were void, not only on the general principles stated, but under the constitution of the United States. If the acts authorized a mortgage, they operated like the decree of the court of chancery, on the remainder only. So far as the estate of Sinclair was in question, they

were never brought under the view of the legislature. This was Clarke's own idea. Notice was given to the mortgagees; and they took subject to the lease. This was a confirmation of his previous acts.

Clarke was clearly estopped, in every view; to question the lease to Sinclair. This estoppel operated upon the mortgage, and all claiming under it. An estoppel runs with the land; and, running with the land, it constitutes a title, according to the 2d resolution in *Trevian* v. *Lawrence*, (1 Salk. 276.) The estoppel thus running upon Mapes and Oakley, the mortgagees, it ran upon the same principle through the chancery suit, and passed to Field, the purchaser from the master. He purchased with notice of, and subject to the lease; and at a reduced price, because of the preceding term. Thus, even if the lease was defective in some of its formalities, he can have no legal right to deny its validity. The estoppel was proclaimed at the auction. As against him, it should be intended there was a good and valid delegation of authority from the trustees, to execute the lease to the defendant below.

But the lease to Sinclair, the defendant below, is a valid lease, prior in date and execution to the mortgage, and cannot be affected by the foreclosure, if the mortgage had been proved.

The first lease expired on the first of May, 1820. The demise is laid on the 2d of May, in that year; so that the *first is not in question except by way of illustration. Sinclair is estopped to deny its existence, on account of the recital in his last lease.

As to the two powers of attorney from the trustees under the will, they must stand together, and were not revocations of each other. Mrs. Maunsell not joining in the last, it certainly could not affect the first, under which, therefore, Clarke had power to act, and give a valid and binding lease. He had a legal and equitable interest, or rather an equitable interest, with a legal right to make leases. I am content to take it, that the interest was good only during his life. He was alive at the time of the trial; and there is no need of looking to, or at all consider-

[*559]

ing the rights of those in remainder. Their rights are to be decided when the proper contingency shall have happened.

If the powers did not authorize the lease, then, it is contended that Clarke had power to lease *suo jure*. But let us look at the power from the trustees. The interest given by the will is agreed to be a trust; and the power to make leases is delegated as an incident to the trust. The devisees of the legal interest were joint tenants in trust; and their right to make leases depends on the incidental powers of such joint tenants and trustees. As joint tenants, they might clearly lease, either severally or jointly, *in præsenti* or *futuro*. (Bac. Ab. Joint Tenants, &c. (H.) pl. 1.) I agree that, as between the joint tenants, where a part only demise, this can operate only on a moiety; but it can be avoided only by the one on whose estate it trenches. This is, therefore, a question only between the joint tenants themselves. They are seised *per my et per tout.* The question cannot arise here because they all have joined in the power to lease; and if they have not, none can take advantage of it but the *cestui que trust,* or some one claiming under him. The authority of the joint tenants to lease, is not a power, but an authority incident to the estate. Could they not make a bailiff to distrain for rent? How is this with the trustees of large estates? *They cannot, in the nature of business, do everything personally. If there be any fault, it is in Clarke; not the trustees; and equity would undoubtedly compel him to make good any defect in these leases. Sinclair was in possession under a lease for which he gave a full consideration, having an equitable right at least. Who can dispute it? Not the trustees. They have given the power; and have not attempted to avoid it. Mrs. Maunsell has made no attempt to avoid the lease; and no stranger can do it. The children may, when they come to their estate in remainder; but during the life of Clarke, no one can. The lease is not void. At most it is only voidable. If it depends on the last power, no one could avoid but Mrs. Maunsell, who did not execute it; and she dying, the whole

[*560]

power and interest survived to the other two trustees. It followed that they were bound by their act.

Though the lease was *in futuro*, it substantially agrees with the order of the chancellor; and is, therefore, good as depending upon that. There were several years of the original lease yet to run, when the second was executed for 14 years. The order allowed Clarke to lease for a term not exceeding 21 years. Any formal defect in the lease would be amended by chancery. If the time allowed has been exceeded, the lease is good *pro tanto*. Either a legal or equitable estate in the tenant, will protect him in his possession. But it is enough, that during Mrs. Maunsell's life, no one sought to impeach the lease. The only operation of the decretal orders, if they had any, was on the remainder of the children. During Clarke's life, he had authority independent of any order or decree of chancery. It cannot possibly have any effect on the lease while he is alive.

But grant that the lease was void, both as an execution of the power and under the order of chancery; at any rate, Clarke was personally bound, admitting the total want of authority. This was held in *White* v. *Skinner*, (13 John. 307,) following the principle of *Dusenbury* v. *Ellis*, (3 John. Cas. 70.) He had the beneficial interest *in the rents of the lease. Having such interest, he binds himself for life. Having no authority, the lease enures by way of a direct demise from himself, in his own right. (Co. Lit. 52, a.) He not only leases, but sells the rents to Sinclair, and covenants that he shall enjoy them, and releases him from them. This was for a valuable consideration. Then the statute was passed discharging the trustees, and transferring their power to Clarke; or, in other words, the legal estate is vested in him. After this act passed, who could interfere with Sinclair's possession? Not the old trustees, for they were discharged; not Clarke, for he was bound. There was then no one who could interfere. Sinclair was, therefore, in for the life of Clarke, without power in the law to question his right. Clarke was completely estopped to question this right. He is estopped by the recital in the

[*561]

last, to deny the existence of the first lease. (*Jewell* v. ──────, 1 Roll. Rep. 408. 1 Roll. Abr. 872, tit. Estoppel, (P.) *Shelly* v. *Wright*, Willes, 9. Co. Lit. 352, a.) A mortgage from Clarke, independent of the statutes, could therefore never have dispossessed Sinclair. His rights were complete when the statute passed; and we have seen that it must, therefore, have been inoperative as to him.

*T. J. Oakley*, for the defendant in error. It is agreed that the defendant below could not protect his possession under his first lease, because it had expired before the demise laid in the declaration. Another reason is, that it was not proved, except by the recital in the second lease, which could not affect the plaintiff below.

But both leases were absolutely void at law. If there be equitable rights, it is not for me to inform the court that the remedy to inforce them is in another place. Why, at this day, gentlemen should urge them in a court of law, is to me inscrutable. If the object be to reach the feelings of members, it is certainly worse than useless.

The leases were both executed under the power of 1808. This was executed by only two of the trustees to Clarke, who gives the leases, as attorney to them; and as *to the last, in a few days after, he releases the rents. The order in chancery mentioned at the end of this lease, confers no power to release rents; but is opposed to such a power. Both powers were void. The power or trust created by the will, was not a power to lease; but only to receive the rents, &c., on such leases as existed. It passed a trust to the devisees. A trust to give new leases is not mentioned. The distinction between a trust and power does not exist under a will. Both are authorities to control the estate in a particular manner, and nothing more. No power follows either in law or equity, to dispose of estates willed to trustees, unless it be expressly conferred. The devise is limited. The power is limited. If this were not so, it might be proper for the opposite counsel to say that the right of leasing is incidental to the trust. There is then no such thing in the case as an incidental power of leasing.

[*562]

Whether the authority given by the will be called a power or trust, it must be strictly executed.

But if the trustees had power to lease, that could not be delegated to, or exercised by an attorney. It is perfectly well settled that a power given to trustees or executors cannot be executed by attorney. (Sudg. on Powers, 1st Am. from 3d Lond. ed., p. 175, and the cases there cited.) The distinction is between what involves a discretion and a power to do a certain specific act. In the former case, the trustee must act in person; in the latter, he may delegate. (Id. *Combe's Case*, 9 Co. 75, b.) *Combe's Case* is the very one before this court. *Berger* v. *Duff*, (4 John. Ch. Rep. 368, 369, and the cases there cited,) are also in point; and *Heyer* v. *Deaves*, (2 John. Ch. Rep. 154,) of a master's sale, is the same in principle. Where a simple act of consent is required to the execution of a power, the donee cannot delegate his right of consent to another. (Sudg. on Powers, 265. *Hawkins* v. *Kemp*, 3 East, 410.) In this case the trust was cautionary against the acts of Clarke; and yet the power is sought to be conferred upon him. The case mentioned on the other side, of a right to receive rent, or power to *distrain, is specific, and may be delegated to an attorney or bailiff. But the power in this case defeats the views of the devisor entirely. The power of leasing is general. There is no limitation upon it. The power is, in its nature, discretionary; and therefore cannot be delegated.

But if the authority of the trustees was, in its nature, transferrable, the power of 1808 was void in law; for it did not amount to a delegation. A power must be executed by all the trustees alive at the time. If a naked power, it is gone on the death of any one of the joint donees. But where it is coupled with an interest or attached to the estate, it survives. (1 Cain. Cas. Err. 16; Harg. Note 146 to Co. Lit. 113 a.) This is a power coupled with an interest. But in neither case was it ever holden, that a part only of the donees might execute the power given to the whole. In whatever act trustees do, they must all join, if alive. (1 Cruis. Dig. tit. 12, Trust, ch. 4, s. 36, 2d Am

[*563]

from 2d Lond. ed; *Franklin* v. *Osgood*, 14 John. Rep. 527, 553, 563; *Green* v. *Miller*, 6 John. Rep. 39; *The King* v. *Beeston*, 3 T. R. 595, per Ld. Kenyon, C. J., Co. Lit. 113, *a;* Sugd. on Powers, 162, 3, and 167, note (1) to 1st Am. from 3d Lond. ed; id. 263; 4 Vin. Abr. Trust, (F. *a.*) pl. 3; *Rothwel* v. *Hussey*, 2 Cas. Ch. 202.) If void, the lease could not be confirmed.

ALBANY,
Dec. 1826.

Sinclair
v.
Jackson.

Again; this lease was made to commence *in futuro.* Such a lease cannot be given under a general power to give leases for a certain number of years; but such a power should be specially delegated. This has been again and again expressly held, as may be seen by a variety of cases cited in Sugd. on Powers, 583, ed. before cited, id. 485, 6, and 594, and this especially, where there was no lease *in esse* at the time of executing the power.

Again; take both leases together, and they exceed the term for which the powers authorized a lease. Thus, the lease is absolutely void at law. This has been often held. (Sugd. on Powers, 550, ed. before cited.) The very point was adjudged in *Roe* v. *Prideaux*, (10 East, 158.) I need not surely repeat, that its being good *pro tanto* in equity would be no answer here.

*The lease cannot be made good by the supposed death of Mrs. Maunsell before the trial. There was no evidence of her death before that time; and surely the court will not infer her death; and that, too, before the mortgages under which the plaintiff below claimed were executed; for this would be necessary, to give validity to the leases, if her death could have that effect. But it could have no such effect. Before her death, the power of all the trustees became extinct by their own act, and the acts of the legislature.

[*564]

Neither of the leases can be upheld by the power of 1805. They do not purport to be executed in virtue of that power; and if otherwise, the execution of the power is void, as being in the names of only two of the trustees. The lease of 1813 is subject to the same objection under this power, as under that of 1808; being to commence *in futuro,* and exceeding the term of 21 years.

Nor can it be maintained that this lease of 1813, is within the chancery order of 1813. That decree authorizes all the trustees, and the survivors and last survivor, to lease for a time not exceeding 21 years. They must all have joined, therefore ; and the lease could not, in any event, be exe-cuted by attorney. A master in chancery might as well sell by attorney. The leasing was as much a matter of special confidence in the trustees personally, as the sale would be in the master. The lease was not in fact, nor does it purport to have been, given under that decree. But if it was intended to follow the decree, it is void as not doing so. The authority of the decree is not more pursued than the power ; both leases being for more than 21 years, the rent not being reserved in the terms of the decree. (Sugd. on Powers, 613, 625, ed. before cited;) and the last being a fraud on the decree as commencing in *futuro.*

There has been no act confirming the lease ; and if otherwise, being void, it was incapable of confirmation at law. The evidence of taking the mortgage and buying at the master's sale, was by parol, and inadmissible to contradict the documental evidence. If the circumstances create any *right in Sinclair, it is an equity merely, and comes within the remarks already made. (And vid. 2 John. 226, 3 id. 422.) The doctrine of estoppel has no application whatever. The cases cited to this point, ( *White* v. *Skinner*, 13 John. 307, *Dusenbury* v. *Ellis*, 3 John. Cas. 70, and *Appleton* v. *Binks*, 5 East, 148,) on the principle of which last the former cases go, merely hold, that where one professedly, but without powers, promises or covenants as attorney, he shall be personally bound to fulfill. In the principal case, there is in truth a power of attorney technically drawn, and good in point of form. The lease is executed under it in the name of the principals, not in that of the attorney. The cases do not decide that a deed executed by an attorney shall operate on his interest in the estate, whether present or future. They rather turn on the form in which the instrument is executed. But if otherwise, Clarke acquired no subsequent interest. An estoppel may operate either on the estate or the person. The acts of the legislature merely

[*565]

gave Clarke power to execute the trusts of the will. Where was the fee of the estate during the interval between the passing of the acts and the execution of the mortgage? It was in the old trustees, without any power to dispose of it. Clarke was finally authorized by the second act to do what the old trustees might do when in power; but that was only to execute the trusts of the will. In *Jackson* v. *Mills* (13 John. 463, 4,) it was held, that the execution of a trust by a trustee will not operate as an estoppel against any title he may thereafter acquire. For a conveyance to operate as an estoppel on a former, it is necessary that it should be in the same right with the former one. Here, Clarke giving the mortgage, does not come in the same character as when he gave the leases. The first was a void execution under a power; the second a valid mortgage under a power given by the legislature, and the order of the chancellor. There is no privity of estate between Clarke and the mortgagees. They claim directly under the will. Suppose Clarke had first conveyed as the guardian of infants; it might operate on his estate, but it would not operate on the estate of another, *who should authorize him to convey. So, if the legislature have made Clarke attorney to give this mortgage. To estop, a conveyance must be by one claiming under, and in right of identically the same power and the same estate as he first conveyed.

[*566]

The lessor of the plaintiff below acquired a good title under the master's deed, at least during the life of Clarke. The acts of the legislature are valid, and binding on all interested in the premises in question under the will. If the children of Clarke are not bound, they alone can question the mortgage. By these statutes, and the several orders in chancery, the old trustees were removed, and Clarke had power to execute the mortgage, and especially to transfer a valid estate during his life. The mortgage was executed pursuant to the statutes and orders of the chancellor.

It is said on the other side, that the laws are void as to every body, because they affect the rights of the children, or those of Sinclair. We deny that they are void in any respect, even as to the children. We deny this, first, upon

authority. (2 Bl. Com. 345, 6; 5 Cruis. Dig. tit. 33, Private Act, § 28, 33.) These books prove that the rights of infants, as well as those in remainder or reversion, may be bound even without their consent. By our own act concerning infants, (sess. 37. ch. 108,) the chancellor is authorized to direct the sale of infants' estates for their maintenance or education. This is constantly done on a summary application; nor has there been an attempt to question the right. An act of our legislature is equal in power to one of Parliament, except where they are restrained by the United States or state constitution; and the English authorities apply. None but strangers can question the validity of such an act. Here, the trustees and C. B. Moore, the ulterior remainderman, were parties to the first act. Under the second, the remainderman releases all his interest to Clarke. The laws recite the will, and that the body of the property devised is unproductive. These are to be taken as facts, especially in reference to Clarke's life estate; and it is certainly not necessary that *we should look beyond that. So far, every body in interest assented to the statutes. Sinclair had no vested rights that could be affected. He had no estate at all; but was a mere stranger to the estate, and therefore could not object. (5 John. 47.) If he had any estate, we agree that all must be void in respect to him. As to the discharge of the trustees, the chancellor might have ordered it, without any statute on the subject. (2 Mad. Ch. 161, 162, 2d Am. from 2d Lond. ed. 14 John. 557.) But as they had assumed the trust, they thought proper, out of more abundant caution, to procure an act of the legislature. The interest of their children was contingent, and depending on their survivorship of Clarke, who is not dead. Even if all were in hostility to the will, Sinclair cannot object, for he comes as a mere wrong doer. But is this so? Deeds are to be given, and the proceeds to be disposed of in a certain manner, in which provision is made for the children. This is out of the very income which was given by the will to Clarke, a thing which they had no right to exact; and the balance of the principal was to be finally paid over to the

[*567]

children. Indeed, the acts are a simple removal of the trustees, and giving power to convert the real into personal estate, by the substitution of new trusts. We have seen that our general act authorizes the court of chancery to divest the titles of infants in a similar manner. The court would be cautious, therefore, not to question such a power, even as to the infants. To overturn it, would be to shake numerous titles; and it is not necessary to the decision of this case. The legislature might pass a law that there should be no such thing as infancy. Indeed, there is little doubt, that if necessary, the validity of these laws, even as to the infants, might be sustained, both upon principle and authority. The second act left Clarke the only person in interest, beside the children. It virtually substitutes the chancellor himself as the trustee. It did what is done every day with infant's estates. The 3d act gives the power to mortgage, and apply the proceeds under the direction of the chancellor. If the proceeds have *been misapplied, this cannot affect the title of the purchaser.                    [*568]

These laws do not impair the obligation of contracts, within the sense of the constitution of the United States. It is not a case coming within that constitution; which refers to the discharge of one from a personal obligation. A familiar illustration is the insolvent law of 1811. The statutes could not discharge Clarke from personal liability on his covenants in the lease. The question here is of another class: the power of a statute to divest estates.

The nature of the debt due to the mortgagees was no objection. The second order extends, in its true construction, to debts already existing, or those to arise on new advances. It refers to the first order for the mode in which the moneys to be raised were to be appropriated, which was expressly to pay debts, present and future. There was no substantial difference whether the mortgage was direct to a creditor who had advanced or should advance necessaries, or to another for moneys in order to pay for necessaries. His authority to mortgage extended to all that he was previously authorized to sell, which included the premises in question. The order, and not the petition recited, fixes the

extent of the subject matter. The master who approved of the mortgage shall be presumed to have approved of the debt. Why he is called trustee in the mortgage, I know not, unless it was on account of his having been appointed to superintend the sale. His being called trustee cannot vitiate, nor would the omission of his name be a defect, unless it appear that he was a trustee. It is enough that the master was satisfied the debt was a fair one; that the mortgage cannot be impeached for any defect in the proceedings of the chancellor or his master.

The plaintiff below exhibited sufficient evidence to authorize a recovery. The enrolled decree and master's deed were, *prima facie*, sufficient to throw on the defendant below the burthen of showing by what right he possessed the premises, without the production of the original mortgage. His title being void, he cannot object that the right *was not transferred by the foreclosure and sale. (*Grant* v. *Duane*, 9 John. 612.) The court below held, that it was not necessary to produce the original mortgage; and if this was a mistake, the only consequence would be a *venire de novo*, and retrial of the cause. It is the constant practice at *nisi prius*, to rely on the enrolled decree alone. The decree creates a lien on the land, the same as a common law judgment; indeed, a clearer lien, for it is specific and definite. The gentleman on the other side mistakes in likening the mortgage to a judgment. A mortgage may be questioned, but this cannot be of a judgment or decree, in any collateral way; though you may, in either case, show the title of the debtor to have been divested previous to the judgment or mortgage. But if Clarke had a right to make the mortgage, no man can deny, in a collateral suit, that such mortgage existed. The object of the plaintiff below was to deduce a title from the will of Mrs. Clarke. For this purpose he proved the will, the statutes, orders of the chancellor and the foreclosure. True, Sinclair was not a party; neither, perhaps, is a defendant, against whom there is an ejectment under a judgment.

But the objection certainly comes with an ill grace from the defendant below, after he had himself proved the mort-

gage at the close of his case, and shown the circumstances under which it was given. Beside; the objection in the court below did not embrace the mortgage to Kennedy, one of the defendants in the enrolled decree, under whose mortgage we also have a right to claim. That alone would give us a complete title.

It was certainly not necessary to record the power of sale. (*Bergen* v. *Bennett*, 1 Cain. Cases in Error, 17, 18.) The 1 R. L. 374, s. 7, and 490, s. 11, declare the effect of deeds on foreclosure. The omission to file the mortgage should not affect the purchaser. It is not even necessary, in this state, that the report of the master as to the sale should be confirmed, before a deed is executed to the purchaser. (*Monell* v. *Lawrence*, 12 John. Rep. 521.) But Sinclair cannot object any irregularity, for another reason. He has no title, and is, therefore, to be esteemed a total stranger. (*Grant* v. *Duane*, 9 John. 612.) But we again *say no one could object. There is a rule of the court, or of practice, requiring the mortgage to be filed; but it was in the custody of the law: and, if the defendant below, as he now asserts, had wished to show any reservation, or qualification on its face, he might have obtained it from the master, if it was not in truth filed.

*Emmet*, in reply. The equitable claim of the defendant below is important in this case, in arguing upon the statutes. An act which destroys such a right, is equally void within the constitution of the United States, as if it went to a legal right. I admit that parties in ejectment must go upon their legal titles; but we have a right to destroy a legal title by setting up an equitable one, and showing that it could not be affected by statute. If I can show that Sinclair had a possession which chancery would have protected by injunction, in the view which we take, this court will protect that possession. He had a right which no act of the legislature could divest. As to him, such acts are void.

I deny that trusts under a will and powers are the same. A will of land differs from a deed only in admitting a more favorable construction; and unless trusts and powers

<div style="text-align: right">

ALBANY,
Dec. 1826.

Sinclair
v.
Jackson.

[*570]

</div>

ALBANY,
Dec. 1826.

Sinclair
v.
Jackson.

in deeds are the same, neither are those in a will. The distinction in both cases, is between powers coupled with an interest or estate, and naked powers. A naked power may or may not be executed, at the pleasure of the donee; for instance, a power to sell; but if it be devised that executors shall sell, this is a power coupled with an interest, which the trustees are compellable to execute. Then comes an estate coupled with a trust. There you must execute the trust; and the estate authorizes you to do every thing necessary to the execution of the power or trust. The only restriction is, that you must so conduct as not to injure the *cestui que trust.* If you do, this will be a breach of trust; but still this is cognizable in a court of equity only. A court of law has nothing to do with it. It has every legal incident of a joint tenancy, in the tenants, the survivors and their heirs. Here the trustees were [*571] *joint tenants in possession. They were to receive the rents and profits; and could not do this unless they were in possession. Clarke could not take possession. The fallacy of the argument on the other side, is in treating every thing as incident to the power and not to the estate in fee simple, which the trustees owned in the eye of the law. We must look for a solution to the old law as it stood under the statute of uses. By that, the feoffee or grantee to uses had the freehold in him, which he might grant. (Gilb. on Uses and Trusts, 13, 27, 2d ed.) He might, and a trustee may now grant the office of steward, bailiff or receiver, and appoint all means to carry the profits to the *cestui que trust.* (Id. 14, citing Bro. Feoffe to Uses, 339, s. 27.) At this day, if a trustee alien for a valuable consideration, without notice, the whole estate passes discharged of the trust. (1 Cruis. Dig. 2 Am. from 2d Lond. ed. tit. 12, Trust, ch. 2, s. 3, p. 484. 2 Fonbl. ch. 8, s. 1, note (a.) In *Roe* v. *Reade,* (8 T. R. 118, 122, 123, per Lord Kenyon, C. J.,) it was held that the trustee may bring ejectment and turn his own *cestui que trust* out of possession. If the trustees cannot sell, we ask who can? In law, then, Clarke had no power to make leases. That power was in the trustees.

Whatever a trustee may do as incident to his estate, he may do by attorney. It is so as to every man. The object of the will was not to guard Clark against himself, but against his children. It kept the estates as distinct as possible, by trustees, to prevent his acquiring the fee, according to the caution suggested by *Shelly's Case*, (1 Rep. 93.) They were in the nature of trustees to preserve contingent remainders, like those in a marriage settlement. Such trustees can only be controlled by the court of chancery, on complaint of the *cestui que trust*. In this case, Clarke having made leases, he might have gone to chancery, and compelled the confirmation at the hands of the trustees. (1 Cruis. Dig. tit. 12, Trust, ch. 2, s. 5, ed. before cited.) Thus the power to lease, in this case, was no more than a doing of precisely what a court of *equity would have ordered the trustees to have done, and Mrs. Maunsell among them.

[*572]

The authority cited by the learned chief justice, (Cruis. Dig., tit. 12, ch. 4, s. 36,) to show that trustees must all join in conveyances, though the language of the writer, Cruise, is not sustained as to conveyances, by the authorities on which he relies. Not a word is said in either of them on the subject of conveyances; and what Cruise says is contrary to Gilbert, who declares that one trustee may sell his moiety, even where there is a devise in trust. (Gilb. Uses, ed. before cited, 67.) Indeed, such a grant is, in the nature of such estates, good for the whole till the non-aliening tenant interferes; and then it becomes less only a moiety. A stranger cannot take advantage of the nonjoinder to any extent. The co-tenant alone, at law, or the *cestui que trust* in equity, can do this. If neither do it, the alienation of one is good for the whole; for he is seised *per my et per tout*.

In this view, it is immaterial whether the lease was to commence *in præsenti or futuro*. In either case, it would be valid for the life of Clarke. The object of the order in chancery was merely to bind the remainder. All objection as to excess of time vanishes. It cannot be doubted that equity, at least, would support this lease, as well

in point of time as otherwise. So far as it is calculated to affect the remainder, it will be void at the election of those in remainder. Beyond the period of Clarke's life it cannot go.

I admit the power of the chancellor to act for the benefit of infants. The manner in which he must have acted ir a case like the present, had it not been for the statutes, would be by removing the old trustees, and ordering a conveyance to the new by a common law assurance; not by creating a new estate through the appointment of trustees. So far as a change of trustees goes, the orders in chancery will be useful to show a legal estate in Clarke, which completes the title of Sinclair. He is personally bound by his executory covenants only, in which he exceeded his authority. It is just that this should be so, because *he had the beneficial interest. It is insisted that in the cases cited, of attorneys personally bound by excess of their power, they executed in their own names; not in the names of their principals. But there is no difference in principle. The operation is the same, if it appear that he acts as attorney. No matter in what form of words the agency is denoted. "For J. B. (the principal) M. W. (the attorney,)" is as good an execution for the principal, as if it had been directly in his name. (*Wilkes* v. *Back*, 2 East, 142.) Being thus holden on the covenants for quiet enjoyment, &c., Clarke assigns the rents in his own name, claiming in the assignment to own the lot for life. This sale of the rents operates as an estoppel, when connected with his previous covenant for quiet enjoyment. Then came the statutes, which gave Clarke a fee simple, if anything, discharging the former trustees, and substituting him to sell. The fee was not in abeyance. If an ejectment had been brought for the land, on whose demise must this have been ? Clearly on Clarke's. He must have held the legal estate for his life at least. If so, could he ever deny the validity of his lease and assignment ? His covenants by which he was confessedly bound, and bound personally ? Then every one who takes from him, the mortgagees, and the purchaser from them among the rest, are equally es-

[*573]

topped within the rule that an estoppel runs with the land. Thus there is a complete estoppel by those acts which are in the name and right of Clarke, acts by which he himself was bound as to person and title. On the other hand, if there be no estoppel, it is because the statutes and orders are void. On this ground the mortgage falls: so that, *quacunque via data*, Sinclair must hold the possession. These statutes passed to divest the estate of the children; and that, too, without an equivalent. It is no answer, to say the purchaser had nothing to do with the application of the moneys. We say the acts are unconstitutional. The very power to invest the proceeds in Clarke was unconstitutional. It is taking his children's property to pay his *debts. The last order of the chancellor is a complete victory over the will. It is said we may still sue on the covenant for quiet enjoyment; that that is not annulled; but we say the statutes seek to deprive us of the possession of land, and give us an action against a bankrupt. They impair the fair force and effect of our contract. There was nothing more done in the case of *Dartmouth College*, (4 Wheat. 518.) The clause in the constitution is remedial; and should be construed beneficially and liberally in favor of rights.

As to the performance of the terms imposed by the statutes and orders, it is not a question of appropriation of the money; but whether the orders have been followed; whether the conditions precedent have been complied with. As against the right of the children, everything should be construed strictly. Providing for the payment of an old debt, was a fraud on the court of chancery. It should appear clearly, not by inference only, that the master inquired of the debts.

Field claimed under the mortgage to Mapes and Oakley alone; of course, the objection could only be made to that. If they now rely on that of Kennedy, the same objections apply.

It is said the enrolled decree alone is usually produced at *nisi prius*. This may be the common and correct mode of proof; because the action is generally against one who

ALBANY,
Dec. 1826.

Sinclair
v.
Jackson.

[*574]

is party or privy to the record. The rule must be otherwise where he is neither. (*Jackson* v. *Dickenson*, 15 John. 309.) The validity of the mortgage was *res judicata*, only as between the parties, not as to strangers. The analogy between a decree and judgment does not hold. The decree creates no lien; but the mortgage creates the lien, while the decree merely enforces it. Our witness, it is true, proves a mortgage, but not its contents. He says the mortgage was taken subject to the lease. This is all. I do not allege the want of filing the mortgage as an objection to the title, *per se;* but to show how destitute of evidence we are left; and in answer to the argument on the other side, that we should have produced it, when at the same time, it is kept back from us.

[*575]     *JONES, Chancellor, delivered the opinion of the court. This case comes before the court in a writ of error to the judgment of the supreme court, on a bill of exceptions.

Action below.   The action of the plaintiff in the court below, was an ejectment brought to recover a house and lot in Broadway, in the third ward of the city of New York, by a title under a master's deed for the premises, given in pursuance of a decretal order of the court of chancery, for the sale of the same, for the satisfaction of a mortgage thereon. The master's deed was the plaintiff's title to the premises. The defendant below objected to the sufficiency of that title; and, for his further defense, produced a lease of the premises to himself, given prior to the mortgage under which the plaintiff's title was derived.

Ejectment on a master's deed, on foreclosure.

1st objection.   The first objection to the plaintiff's recovery was the alleged defect of his own title under the master's deed. To understand the bearing of this objection, we must advert to the leading facts of the case, and the circumstances which preceded the mortgage under which the master's sale took place.

The leading facts.   Mary Clarke, who died seised of the premises in fee, by her will, dated April 6th, 1802, devised the same, and certain lands at Greenwich, to Benjamin Moore and Charity his wife, and Elizabeth Maunsell, as joint tenants in fee, in

trust to receive the rents and profits, and pay the same to Thomas B. Clarke during his life, and after the death of Clarke, to convey the premises to his lawful issue.

After the death of the testatrix, Moore and wife and Elizabeth Maunsell, the trustees, in 1805, executed a power of attorney to T. B. Clarke, the *cestui que trust* for life, empowering him to grant leases of the premises for any term not exceeding 21 years; and to take the rents to his own use.

On the 30th of September, 1808, B. Moore and Charity his wife, gave another power (in which Mrs. Maunsell did not join) to T. B. Clarke, authorizing him to lease for any term not exceeding 21 years, or during his life; and to receive the rents to his own use; and further authorizing *him to sell the rents for any term not exceeding 7 years, or during his life.

[*576]

On the 22d of February, 1813, the trustees were authorized, by a decretal order of the court of chancery, to make permanent leases of the premises for 21 years, provided such leases did not interfere with any existing lease; and that the consideration should consist of a yearly rent, and the permanent buildings to be left on the premises.

On the 8th of March, 1813, Clarke, as attorney for the trustees, made a lease of the house in question to Sinclair, reciting a former lease to him for 10 years from the 1st day of May, 1810, and which had 7 years to run, and demising to him the same for 14 years from the 1st day of May, 1820, when the first lease was to expire, at the yearly rent of $450

On the 27th of April, 1813, Clarke sold to Sinclair his interest in the rents to accrue on this lease, for the last 14 years, for $950.

The legislature afterwards, in 1814, 1815 and 1816, passed three successive acts for the relief of Clarke. By the first of these acts, the chancellor was authorized to appoint one or more persons to execute the trusts of the will of Mrs. Clarke, in the place of the three trustees named therein, who were discharged from their trusts; and the trustees so to be appointed were authorized to sell the premises in question, and the moiety of the land at Greenwich.

ALBANY,
Dec. 1826.

Sinclair
v.
Jackson.

By the second act, T. B. Clarke was appointed sole trustee, with the like power to sell; the sale to be with the assent of the chancellor, and the chancellor to direct the mode in which the proceeds should be vested in Clarke as trustee; and by the last act, Clarke is authorized, as trustee, to either mortgage or sell the premises under the order of the chancellor.

Several orders were made by the chancellor under these acts. By one of these orders, made the 30th of May, 1816, Clarke was authorized (so far as the assent of the court was requisite) to give mortgages in fee to the Manhattan Company, or other mortgagee or mortgagees, for *securing as well the money such mortgagees might lend to Clarke, as the debts he might then owe to such lenders.

[*577]

Clarke, in conjunction with James A. Hamilton, (described as trustee,) on the 16th of October, 1818, executed a mortgage in fee on the premises to Mapes and Oakley, to secure a debt of $1000 then due to them; and afterwards gave another mortgage on the premises to D. S. Kennedy, to secure a debt due to him. Neither of these mortgages was produced on the trial.

The mortgage to Mapes and Oakley was afterwards foreclosed on a bill filed by Mapes and Oakley against the other parties; and an order made for the sale of the mortgaged premises to satisfy the mortgagees: and under that order a sale was made, and a deed executed by the master to Field, the lessor of the plaintiff below, who became the purchaser.

No notice is taken of the defendant's lease, either in the pleadings in the suit for the foreclosure and sale of the mortgaged premises, or in the master's deed. But proof was offered and admitted, under exceptions to its competency, to show the admission of Mapes that the mortgage was delivered to and accepted by him, subject to the lease; and the auctioneer was called, to prove that the premises were sold by the master subject to the lease; and that in consequence thereof, they were sold for $4,000 only, when Field, the purchaser, had before offered at one time $5,000,

and at another time $3,500, for Sinclair's term therein, which offers Sinclair had refused.

The plaintiff at the trial, to prove his title, produced the will of Mrs. Clarke, the acts of the legislature, and the several orders of the court of chancery under them, an exemplified copy of the proceedings of the court of chancery to foreclose the mortgage, and the master's deed to Field, the lessor of the plaintiff below.

It was contended, on the part of the defendant, that the plaintiff below was bound to produce the original mortgage to Mapes and Oakley, upon the authority of the rule that prevails in the case of a sheriff's deed, under an execution *upon a judgment at law, which was supposed to be an analogous case. I do not see the analogy. The sheriff's deed derives its force from the judgment; for the office of the execution is to enforce the judgment to which it refers, and from which it derives all its virtue, and hence the necessity of producing the judgment which is the source of the title. But the decree was itself of equal force with a judgment: and the deed executed by the master is declared by statute to be as valid as if the same had been executed by the mortgagor and mortgagee, and to be an entire bar against them, and each of them and their heirs. The decree, then, was sufficient; for it was the adjudication of a court of competent jurisdiction upon the subject matter, and it could not have been necessary to produce the mortgage;[1] and besides, the defendant, who was a stranger to the proceedings, had no right to object to the non-production of the mortgage, for he was not a party to the foreclosure, and the sale could not divest any right he had to the premises.

Other exceptions were taken to the regularity of the

ALBANY,
Dec. 1826.

Sinclair
v.
Jackson.

Enrolled decree of foreclosure and master's deed are evidence in ejectment by purchaser,
[*578]
without producing mortgage.

A stranger cannot object, for the decree does not divest his rights.

[1] An enrolled decree is evidence of itself to sustain a conveyance made under it; *aliter*, if the decree be not enrolled. *Grebbin* v. *Davis*, 2 A. K. Marsh. 17.

There can be no doubt that the decrees of this court rank as judgments, and bind the property of the debtor; and must be paid as judgment debts by the executors. *Woddrop* v. *Price's ex'rs.*, 3 Desau. 206.

A decree is deemed equivalent to a judgment at law, as to the distribution of assets. *Thompson* v. *Brown*, 4 Johns. Ch. Rep. 636; *Woddrop* v. *Price's ex'rs.*, 3 Desau. 206.

ALBANY,
Dec. 1826.

Sinclair
v.
Jackson.

Other exceptions not available.

Grant v. Duane, 9 John. 612.

Mortgages cannot affect Clarke's lease, if that be valid.

proceedings in the suit on the mortgage, but they do not appear to me to affect the validity of the plaintiff's title; and on the principle of the decision in *Grant* v. *Duane*, (9 John. 612,) they would not be available to a stranger, if they did. But the power of Clarke to give the mortgages was called in question, and the acts of the legislature purporting to confer that power, were alleged to be unconstitutional, as violating the vested rights of the devisees in remainder under the will of Mrs. Clarke, and as impairing the contract of T. B. Clarke, the devisee for life, with Sinclair.

I do not perceive the conflict between these mortgages considered as valid securities, and the contract created by the lease to Sinclair. If that lease is effectual, it will take precedence of the mortgage, and must be first fully satisfied, before the interest acquired by the sale under the mortgage, can attach; and if the lease is invalid, it owes its failure to its own defects, and not to the interference of the mortgage.

[*579]

Whether a private statute and order of chancery thereon, transferring the rights of infants, are unconstitutional or void? *Quere.*

*As to the objection to the unconstitutionality of the laws, as respects the rights of the children of Clarke, the devisees in remainder, it involving the validity of the mortgages as against them, they alone are competent to urge it. If they question the legality of the acts of their father, the court before which the objection shall be raised, will give it all the attention which the importance of the principle it involves, and the results it has produced, so obviously require. It would be premature now to examine it. This

---

A decree cannot be incidentally assailed, but is conclusive as to the rights and liabilities of the parties until reversed by the appellate court, or impeached by an original bill for fraud in obtaining it, or attached for palpable error, by a bill of review. *Sanders' heirs* v. *Gatewood*, 5 J. J. Marsh. Rep. 327.

Decrees are liens on real estate only from the time of being docketed, not from the period of enrollment. But an execution may issue immediately after the enrollment, and a levy will hold (where there are no chattels) if actually made upon the real estate. Still, the *fi. fa.* should direct a levy and sale of lands of which the defendant was in possession at the date of the decree. *Norton* v. *Tallmadge*, 3 Edward's Ch. Rep. 310.

A decree in equity for the payment of money, constitutes a lien on land, similar to that of a judgment at law, so as to bind it in the hands of a purchaser whose title has not been matured by the statute of limitations. *Blake* v. *Heyward*, Bailey's Eq. Rep. 208. Am. Chan. Dig., vol. 1, p. 507, *et seq.*, Nos. 186, 190, 192, 233, 234, 237.

court, in my judgment, owes it as well to the purchasers who may have acquired titles under those acts of the legislature, as to the devisees in remainder, whose interests are affected by them, to reserve their expresson of an opinion, and indeed to forbear forming one upon the constitutionality of the laws, or the efficacy of the proceedings under them, until the parties interested in the decision shall be heard, and the best lights in their power shall be shed upon the subject. Whatever objection might be made by other parties to these ingredient points of the plaintiff's title, as between the plaintiff and the defendant in this suit, the laws must be regarded as valid, and the mortgage as duly authorized by the provisions of those acts and the orders of the chancellor. But if the mortgage was unauthorized by the acts of the legislature, or not in conformity with the orders of the court of chancery, or for any cause inoperative to bind the inheritance, it was good for the lifetime of Clarke; for he had an estate for life in the mortgaged premises in his own right, and was the sole trustee of the inheritance. His mortgage transferred both estates to the mortgagee; and if he attempted to convey a larger interest than he had, his deed will nevertheless bind the interest which was at his disposal. He was living at the time the mortgage was foreclosed, and the premises sold, and at the time the suit was brought, and the mortgage thereon having been regularly foreclosed, and the premises sold under a decree of the court, and the plaintiff claiming under a master's deed, he showed a right to recover; and unless the lease set up by *the defendant was a bar to his action, he was entitled to a verdict.

This lease was given by Benjamin Moore and Charity his wife, two of the trustees in whom the premises were vested, by their attorney, in the lifetime of Mrs. Maunsell, the other trustee, and without her joining in it; and the leading objection to it was, that it was not the concurrent or joint act of all the trustees. The two trustees who are parties to it, executed it by T. B. Clarke, their attorney, by virtue of a power given by them to him, to make leases for a term not exceeding 21 years, in which power Mrs.

*Margin notes:*

ALBANY,
Dec. 1826.
Sinclair
v.
Jackson.

The statutes and orders are valid as between these parties; and the mortgage must be taken as executed in pursuance of them.
But if not, the mortgage was good for Clarke's life.
Conveyance or mortgage in fee, by tenant for life, is good for his life.

[*580]

Of the lease.

ALBANY,
Dec, 1826.

Sinclair
v.
Jackson.

Maunsell, the other trustee, did not join. If this lease is valid, it forms an impregnable defense to the plaintiff's action; for it covered the premises in question, and had fourteen years of the terms demised yet to run.

It will be observed, by turning to the lease, that it recites a former lease of the premises from the same lessors to the same lessee, for the term of 10 years, commencing the 1st day of May, 1810, and ending the 1st day of May, 1820; and then makes a further demise of the same premises for the additional term of 14 years, to commence the 1st day of May, 1820, at the end of the recited lease, with the obvious intention of coupling the new term and the residue of the old term together, to make up the term of 21 years; and thus to exhaust, without exceeding the authority conferred upon the attorney by his constituents, to make leases for terms not exceeding 21 years. ·

The first term of ten years granted by the recited lease, had expired when the suit was commenced; and the demises in the plaintiff's declaration were laid on the 2d of May, 1820, being after the expiration of that lease.

The recited lease was not produced on the trial, but the defendant below relied on the recital of it in the second lease, as sufficient proof of its execution and contents. The second lease was in evidence. It was given in March, 1813, during the subsistence of the first term for 10 years, but was not to take effect until the expiration of that term.

[*581]

*The separate objections to the recited leases are, that it was not sufficiently proved at the trial, and that it had expired before the commencement of the suit. The answer is, that the recital of it in the second lease proved it by way of estoppel, and that it is material as connected with, and supporting the second lease. The first lease, if it was in proof, being expired, cannot avail the defendant, except for the purpose of obviating an objection taken to the second lease, that it was made to commence in futuro. That the objection to the second lease is already fatal, if the existence of the prior term does not obviate its force. But supposing the first lease to be in proof, the plaintiff still adheres to the objection, and it may admit of a question,

Whether, under a *general* leasing power, a lease can be made to commence in *futuro,* after the expiration of a subsisting lease given under the same power? *Quere.*

whether a lease by an attorney, under a power to lease for a given number of years, can be made to commence after the expiration of a subsisting term; but if it can, the two terms, that granted by the new lease and the residue of that which subsists, must not, when coupled together, exceed the time limited by the power. Now, the new lease, in this case, was executed on the 8th day of March, 1813, and was for the term of 14 years from the 1st day of May, 1820, and would, if valid, create, when taken in connection with the subsisting lease, a term commencing on the 8th day of March, 1813, and continuing until the 1st day of May, 1834, being an excess of two months beyond the term of 21 years, to which the attorney was limited by his power: and the lease, therefore, if separately considered from the demise it recites, being to commence *in futuro*, and if taken in connection with the prior demise, creating an excess of time in the execution of the power, would seem, in strictness, to be absolutely void in law, on that ground alone. (Sudg. on Powers, 550. *Roe* v. *Prideaux*, 10 East, 158.) It might be good in equity, *pro tanto*, but the equitable rights of the defendant could not shield him against the legal title of the plaintiff, in an action of ejectment.

*Margin notes:*

ALBANY, Dec. 1826.

Sinclair v. Jackson.

If it can, yet both terms must not exceed the time or term limited in the power.

Such excess makes it void at law *in toto*; though it might be good in equity, *pro tanto*. (Sudg. on Powers, 550. *Roe* v. *Prideaux*, 10 East, 158.

It is further objected to both leases, that the trustees had no power, by the will, to make leases, and that if a power is implied, it could not be delegated to an attorney; but *being coupled with a confidence, must be executed by the trustees themselves, in person. To this objection, the defendant below answers, that the power to lease is incident to the estate vested in the trustees; and, being incident, may be executed by an attorney. The point is not free from difficulty. It evidently pressed itself upon the parties at an early stage of their trust operations, and prompted them to an application to the court of chancery for further powers. It was competent to that court to vest the trustees with the authority so important to the beneficial exercise of their powers; and an order was made authorizing them to give permanent leases for 21 years. This order removed the exception to the want of power to lease; and

*Margin notes:*

Equitable title no defence against a legal one in an ejectment.

[*582]

Whether trustees can lease without express power? *Quere.*

Whether they can act by attorney? *Quere.*

ALBANY,
Dec. 1826.

Sinclair
v.
Jackson.

*Semb.* they may, if they restrict him to the conditions imposed upon themselves.

But they must all join in a lease, if alive, or no interest whatever passes, whether they lease in person or by attorney; not even the moiety of those who do execute the lease.

the better opinion is, that they might act by attorney, provided they restricted him to the conditions prescribed by the order, and left him the executory act alone, of executing a lease for them in conformity to the order. It is questionable, whether the authority they delegated to Clarke, was sufficiently qualified and guarded, to free it from objection on those grounds.[1]

Be that as it may, another objection is raised, which applies to both the leases, and appears to me to be insuperable. It is, that they were not executed by all the trustees who were living at the time. Mrs. Maunsell is not a party to either of them. She executed the first letter of attorney to Clarke, but did not join in the second. It is said that the second power did not supersede or revoke the first; and that the attorney may be considered as acting under the joint power of the three trustees, and not under the separate power of the two alone. There is strong internal evidence to show that he intended to act under the latter

[1] Where an estate is devised to executors, in trust to sell, convey, &c., they may act by attorney; otherwise, if the will gives only a naked power. *May's heirs* v. *Frazee*, 4 Litt. 391; *Bergen* v. *Duff*, 4 Johns. Ch. Rep. 368.

Where a power was given to B. and C., executors, to sell certain lots of land, if, under the circumstances of the times, they should deem it prudent; held, that an agreement for the sale entered into by B., for himself and C., under a power of attorney from the latter, was not valid, the power to sell being a personal trust and confidence, to be exercised by them jointly. *Bergen* v. *Duff*, 4 Johns. Ch. Rep. 368.

Testator devised his real estate and negroes to his son, G. W., in trust, 1. To apply the rents, issues and profits to the use of himself and family, and the education of his children; and, 2. To give or devise by deed or will, the said property (and the rents, issues and profits thereof, over and above what he should apply to the uses aforesaid) "unto all, or any child or children by him begotten, or to be begotten, in such way or manner, and in such proportions, and for such uses, estates and interests, as he shall think fit and proper." G. W. died leaving a will in force, whereby he devised the whole of his estate to his wife, with directions to his executrix and executor (his wife and son) to act under his father's will, in trust, in every respect and manner intended by their grandfather." Held, 1. That the legal title was vested in G. W., coupled with a power or trust to appoint, at his discretion, among his children; 2. That the power could not be delegated; 3. That as G. W. had neglected to execute the power, his children were entitled to divide the property equally. *Withers* v. *Yeadon*, 1 Richardson's Eq. 324; Am. Ch. Dig., vol. 3, p. 242, *et seq.*, Nos. 47, 57, 103.

power; but assuming that he acted under the first, he has made both deeds the leases of B. Moore and Charity his wife, whom he calls the acting trustees, solely, and not the leases of the three trustees jointly. The second lease was made subsequently to the order of the court of chancery of the 22d of February, 1813, authorizing the trustees to make permanent leases of the premises for 21 years, and is said to have been made under *the authority of that order. If so, it might furnish an answer to the objection made to the leases for the want of power in the trustees to lease; but is no answer to the objection, that the trustees do not all join in the lease, for their concurrence in the act was as necessary under the order of the court as under the will of the testatrix. The order authorized them, or the survivor or survivors of them, to lease, and that was the authority they derived from the will. Then was it necessary for them all to join in the lease, as demising parties, to make it effectual in law? It is a settled rule, that when a trust or authority is delegated for mere private purposes, the concurrence of all who are intrusted with the power is necessary to its due execution. (*Green* v. *Miller*, 6 John. 39. *Franklin* v. *Osgood*, 14 id. 560. 1 Caines' Cases in Error, 16. Sudg. on Powers, 162, 263.) The powers of the trustees, whether express or implied, must be executed strictly; and the principle applies equally to trusts or powers coupled with an interest, and where the trust or power will survive, as to mere naked authorities, and the leases not being executed by all the trustees who were living, are absolutely void.[1] The subsequent death of Mrs. Maunsell, if it had

<div style="margin-left:auto;width:30%">

ALBANY,
Dec. 1826.

Sinclair
v.
Jackson.

[*583]

Where a trust is delegated to several, for a mere private purpose, they must all join in its execution. (*Green* v. *Miller*, 6 John. 39. *Franklin* v. *Osgood*, 14 id. 560. 1 Cain. Cas. Err. 16. Sudg. on Powers, 162, 263,) The rule applies as well to trusts coupled with an interest, or surviving trusts, as to naked powers.

</div>

[1] A power to sell, coupled either with an interest or trust, survives to the surviving trustee or executor. *Taylor* v. *Benham*, 5 How. 233; *Peter* v. *Beverly*, 10 Peters, 532.

So, also, if all the trustees or executors decline to act except one. *Taylor* v. *Benham*, 5 Howard, 233.

There is not the same strictness required as if the power to sell were a mere naked one. Ib.

Naked power, power coupled with trust, power coupled with interest. Ib.

Where a power given to several persons to sell, is not coupled with an interest, it must be executed by all, and does not survive. *Peter* v. *Beverly*, 10 Peters, 533.

ALBANY,
Dec. 1826.

Sinclair
v.
Jackson.

been shown, could not avail, for the lease being absolutely void, could not be confirmed. Whether the death of the third trustee, prior to the execution of the lease, might have given validity to the power antecedently executed by the two alone, it is not material to inquire; for the recital of the act of the legislature of April 1, 1814, shows that she was living subsequently to the date of the last lease. There is no evidence to show that she was not living at the time of the trial; and her death could not avail the defendant unless she died before the execution of the mortgage. But it distinctly appears, that the trustees were, in her lifetime, discharged from the trust by their own act, confirmed by the legislature, at their request. The leases, therefore, if capable of confirmation, could not have been confirmed by her, or derive any validity from her death.

It was urged, that if the leases were defectively executed, the *cestui que trust* alone could take advantage of the

[*584]

*defect, and that the plaintiff below could not object to them on that ground. That principle might apply to a voidable lease; but these leases are not merely defective and voidable, but absolutely void; and a stranger may object to a void instrument, for it is a nullity.

Tho' a lease or conveyance of one joint tenant in his own right may operate on his moiety, the rule does not apply to joint tenants who are trustees.

But it is contended that the trustees under this will were joint tenants, and that the separate lease of each joint tenant was valid and effectual for his own share of the joint estate. As applicable to joint tenants of estates in their own right, this position may be true, but the principle cannot apply to trustees; they have no separate interests of their own, on which the separate deeds can operate; they conjointly represent the interest of the *cestui que trust,*

The interest in such case is not to be understood of an interest beneficial to the trustees but of the legal estate vested in him. Ib.

Where an executor, guardian, or other trustee is invested with the rents and profits of land, for the sale or use of another, it is still an authority coupled with an interest, and survives. Ib.

When a power is given to executors [as to sale, &c., of real estate,] and there are no words warranting the conclusion that the testator intended, for safety or some other object, a joint execution of the power, as the office of executor survives, the power also survives. Ib. Am. Ch. Dig., vol. 3, pp 245, 246, Nos. 93 to 100, *inclusive.*

and, unless specially authorized to act separately by the instrument creating the trust, they can make no disposition of the trust estate vested in them, otherwise than by their joint deed. Were it otherwise, each might dispose of his proportion of the trust estate to a different person; and thus, by dissevering the trust premises, materially deteriorate the value of the estate, and greatly embarrass the trust.

The authorities cited to show that trustees may alien the trust estate, and that one trustee may sell his moiety of the estate at law, taken in their broadest latitude, prove no more than that the trustee, having the legal estate vested in him, may, for lawful purposes, or in breach of his trust, alien the lands; but they show, at the same time, that the purchaser to whom the estate is granted, if he take it without notice, takes it subject to the trust, and becomes himself a trustee. They cannot apply to leases or other disposition of the estate in execution of the trust; and where the lessee or purchaser takes an interest in the land under the trustees for his own benefit, and for which he is to pay to the trustees a consideration, or render to them a rent; but which is not to introduce him into the trust as a trustee.

But it was said, that if Clarke exceeded his powers in giving the leases in question to the defendant below, as valid leases of the trustees, when they were in truth nugatory *and void, he has made himself the contracting party, and shall be personally bound by the deeds; and cases are cited to show that an attorney who executes a deed with covenants in his own name is personally liable; (13 John. 307, 310; 3 John. Cas. 70; 5 East, 148;) but these cases turn upon the point, that the party who is held responsible, executed a contract or deed in his own name, professing to have a power from another which he has not. This was the point in the case cited from East, and of that cited from 13 John.; and the principle is salutary and just; for it operates to restrain and punish the guilty, and to protect the innocent; and it encourages fair and open dealing between contracting parties. But it has no application

*Margin notes:*

ALBANY, Dec. 1826.

Sinclair v. Jackson.

They cannot act separately, unless specially authorized by the trust instrument.

Gilbert on Uses, 67, old ed.

[*585]

White v. Skinner, 13 John. 307, Dusenbury v. Ellis, 3 John. Cas. 70, Appleton v. Binks, 5 East, 148, do not apply.

Where an attorney professes to act with power, having none, he is personally bound.

ALBANY,
Dec. 1826.

Sinclair
v.
Jackson.

But not where
he has power,
and errs in its
execution.

Estoppel.

Jewell's case,
1 Roll. Rep.
408.

[*586]

*Shelly* v.
*Wright*, Willes,
9.

Co. Lit. 352, a

A man who
admits an act
or deed, by re-
citing it in an
instrument ex-
ecuted by him,

to this case; for Clarke, the attorney, though he erred, acted in good faith. He did not profess to have a power which he had not; but disclosed fully the authority under which he acted, and executed the releases he gave, in the names of his constituents, and not in his own name.

The doctrine of estoppel was relied on as applicable to this case; but I am satisfied that the principles which belong to that doctrine, cannot affect the plaintiff in this suit.

The estoppel was supposed to be created by the grant and release from Clarke to Sinclair, of the rents reserved by the second lease. This grant and release is indorsed upon the lease. It is executed by Clarke in his own right, and not as attorney to the trustees; and in it, Clarke, acting in his own right, recites that he was the lawful owner and proprietor, for the term of his natural life, of the premises in the recited lease, thereby demised to Sinclair; and was justly entitled to the yearly rents thereof as reserved by the lease. This recital is said to estop Clarke, and the lessor of the plaintiff below, as claiming under him, from denying or calling in question the validity of the lease; and the case of Jewell, (1 Roll. Rep. 408,) is cited to support the position.

In that case, the plaintiff declared upon an obligation, with condition to perform covenants contained in an indenture referred to in the condition: the defendant said *in his plea, that there was no such indenture; and the court overruled his plea as frivolous, because he was estopped from the denial of the indenture. The case of *Shelly* v. *Wright*, (Willes, 9,) is also cited to show that a recital in a deed of a particular fact, or of an indenture, estops the party to deny the fact, or deed so recited; and Co. Lit. 352, b., was relied on, to prove that the acceptance of rent would estop the lessor from denying the lease. The principle of these authorities is not denied; but it has no application to this case. The principle is that an estoppel concludes the party from alleging the truth; and therefore a man who admits a fact or deed in general terms, either by reciting it in an instrument executed by him, or by acting under it, shall not be received to deny its exist-

ence. But when the truth appears by the same deed or record, which would otherwise work the estoppel, then the adverse party shall not be estopped to take advantage of the truth; for he cannot be estopped to allege the truth when it appears of record. Lord Coke, in his commentary on Littleton, who gives the rule contended for, at the same time makes this exception; and baron Comyn, in his valuable digest, confirms both the rule and the exception. (Com. Dig. Estoppel, E. 2.) Two cases are put by them to exemplify the exception. The first is the case of a fine levied, or concord made upon an original on which a retraxit is entered. The parties are estopped to say, when the fine is pleaded, that it was not upon an original, (for it shall be intended well levied,) yet if it appears by the same record, that a retraxit was entered on the original, then the parties are not estopped to say it; for it appears by the record itself. The second is an impropriation to a bishop of a rectory, after the death of the incumbent; and by indenture showing the matter, the bishop demises the rectory for years in the life of the incumbent, and the lease is confirmed by the dean and chapter. The bishop is not estopped by the indenture of demise; for it appears by the same deed that he then had nothing in the rectory.[1]

ALBANY,
Dec. 1826.

Sinclair
v.
Jackson.

or by acting under the deed, is estopped.

But not if the truth appear by that which would otherwise work the estoppel.

Com. Dig. Estoppel, (E. 2.)

[1] By receiving a second deed of warranty from the same grantor of the same premises, the grantee is not estopped from asserting that his title passed by the first conveyance. *Thompson* v. *Thompson*, Maine Rep. by Appleton, 235.

A stranger to the first deed, having no authority to contest its validity when given, cannot defeat that title by means of the doctrine of estoppel, because the grantee has taken a second deed of the same premises. Ib.

Where the former decision of the same matter can be set up on pleading, as an estoppel, the party who wishes to avail himself of it, must plead it in bar of the further litigation of the same matter. But in those cases where the form of proceeding does not allow of special pleading, it may be given in evidence; and is conclusive upon the parties, the court, and the jury. *Kingsland* v. *Spalding*, 3 Barb. Ch. Rep. 341.

Where both parties had derived their title to the premises under the will of a former occupant, and the defendants, or those under whom they derived title, had recovered the premises from the ancestor of the complainant, upon the ground that the legal title was vested in the surviving son of such former occupant by the will of his father. Held, that the defendants were estopped from denying the title of such surviving son, under whose title they had suc-

*Now in the case before this court, the deed of grant and release containing the recital supposed to produce the estoppel, is indorsed on the release, and refers to it; and the terms of the recital are, that he (Clarke) is the owner and

ceeded in their action at law; the complainants claiming under a prior equitable title derived from such son. *Varick and others* v. *Edwards and others*, 11 Paige, 289.

A sale, made by order of the court, is only complete when the terms of sale are complied with, and the purchaser accepts a conveyance. *Cruger* v. *Daniel*, McMullen's Eq. Rep. 157.

The confirmation of a master or commissioner in equity's report of sales, or having paid money, is not a judicial but an administrative order. Its object is not to determine the truth of the fact reported, but to protect and approve of his act; and if the fact be incorrectly reported, the parties are not estopped from showing the truth. Ib.

It is now a well settled rule, that the admission of a party, having complete knowledge, against his own interest, is evidence between third persons; more especially when they are in writing, and the party making them is dead. Ib.

An estoppel is reciprocal, and binds both parties; so a person making a conveyance, who has no title at the time, but afterwards acquires one, is estopped to deny that he was seised at the time of the conveyance. So, also, a party, by accepting a conveyance, is estopped to deny his grantor's title. If he afterwards buys a better title, though he may claim to be reimbursed the money which he has paid to complete the title, he cannot use it, to defeat his contract with his first grantor. Ib.

Estoppels are mutual. *Porterfield's executors* v. *Clark*, 2 Howard, 109.

They run with the land, into whose hands soever it comes; by which the parties and all claiming under them, as well as the courts, are bound. Ib.

Where a vendor conveys a defective title, with warranty, and afterwards obtains the legal title, such title is vested in the vendee by estoppel, and no further conveyance is necessary. *Bush* v. *Marshall*, 6 Howard, 291.

A mortgagor is estopped by his deed from denying seisin. *Bush* v. *Marshall*, 6 Howard, 288.

A party who attempts to impeach his deed in court, must show in what his equity consists; for, as a question of law, he is estopped from denying his own deed. *Payne* v. *Atterbury*, Harrington's Ch. Rep. 414.

In matters of private litigation, no one, in general, can be bound by a judgment, unless he be a party to the suit, or in privity with some party. Ib.

The acts of trustees *de facto* of school lands are valid, and a title given by them cannot be questioned by their successors, nor by any other person. *Moore* v. *Caldwell*, Freeman's Ch. Rep. 222.

The instrument to estop a corporation, must be the deed of the corporation under its own proper seal; and, if the deed of a third person is insisted on, as against the corporation, then his authority and agency must be establish-

proprietor for his life, of the premises described in the with-
in written indenture of lease, and, in and by the within
written indenture, demised and leased to George Sinclair
within named, and is justly and lawfully entitled to the
yearly rent thereof, as reserved by the within indenture of
lease.

ed by the party claiming adversely. *Bank* v. *Rose et al.*, 1 Strobhart's Eq.
Rep. 257.

If the doctrine that a party who has a title to property and stands by and
encourages and promotes a sale thereof to a third person, thereby waives his
title, or is estopped to maintain it, can be applied at all by a court of law to
real estate, it can be so applied only where such party conceals an outstand-
ing title. *Parker* v. *Barker*, 2 Met. Rep. 423.

Where parties go into possession of premises, claiming title thereto under
a conveyance to a particular grantee, they cannot set up an outstanding title
in a stranger, to defeat a person who claims the premises under the same
title as themselves, but by a prior right, which overreaches their claim. *The
Bank of Utica* v. *Mersereau*, 3 Barb. Ch. Rep. 528.

Persons entering into possession of land, under the defendant in a judg-
ment, subsequent to the issuing of an execution thereon, are bound to yield
up the possession to the purchaser under such execution, unless they can
show a better right in themselves, or establish the fact that the judgment
was invalid as against them. Ib. Vide 2 Barb. S. C. Rep. 206.

Where the breach of the covenant of seisin in a deed, affects the whole
title, so that nothing passes to the grantees, a recovery by such grantees for
the damage sustained by the breach of that covenant, may have the effect
to prevent the operation of the estoppel created by such covenant, or even
by a covenant of warranty; by creating a counter estoppel, which would
prevent the grantees, or those claiming under them, from alleging that they
acquired the title to the land, by the original conveyance to them. Ib. Vide
9 Mass. Rep. 143; ib. 336.

Although the grantee in a deed which contains a covenant of seisin, in
connection with general covenants of warranty, and the heirs and assigns of
such grantee, are not estopped by such deed from showing that the grantor
had no title to the land attempted to be conveyed, the warrantor and those
claiming under him, in the post, are estopped by his covenants from alleging
that he had not a perfect title to the land when he conveyed the same with
warranty. Ib.

And, therefore, a re-conveyance of the land, by the grantee thereof, with-
out covenants of warranty in such re-conveyance, will not prevent such origi-
nal grantee from recovering for a breach of the covenant of seisin contain-
ed in the conveyance of the premises to him. Ib. Vide 3 Johns. Rep. 363;
9 Mass. Rep. 336.

Where a party enters into the possession of land, claiming under a parti-
cular title, he cannot set up an outstanding title in a stranger, as a defence
to a suit, brought by the owner of the title under which he entered, to reco-

Now this recital of the lease, and reference to it, made it parcel of the deed of grant and release, as fully as if it had been recited at large and incorporated therein. Indeed, the release is unintelligible without the lease to render it complete; and reference must be had to the lease, to

ver the possession of the premises. *The Bank of Utica* v. *Mersereau*, 3 Barb. Ch. Rep. 528; Vide 6 Johns. Rep. 34; 7 Ib. 157; 6. Ohio Rep. 89; 4 Dev & Bat. Law Rep. 449.

But a party who has gone into possession of land as the tenant of another, and acknowledging his title, is only estopped from denying the validity of that title, and setting up a better right in himself, so long as he retains the possession, or during the continuance of the tenancy. For, upon the termination of the lease, and the restoration of the possession, he may sue and recover back the possession of the premises, upon showing a better title in himself. Ib. Vide 2 Binn. Rep. 471; 1 Nott & M'Cord's Rep. 374; 7 Cowen's Rep. 644; 12 John. Rep. 183; 5 Conn. Rep. 301.

By the common law, if a grantor who has no interest, or only a defeasible interest in the premises granted, conveys the same with warranty, and afterwards obtains an absolute title to the property, such title immediately becomes vested in the grantee, or his heirs or assigns, by estoppel. And if the grantee, or any one claiming title from him, subsequent to such grant, seeks to recover the premises by virtue of such after acquired title, the original grantee, or his heirs or assigns, by virtue of the warranty which runs with the title to the land, may plead such warranty by way of rebutter or estoppel, as an absolute bar to the claim. Ib. Vide Cov. Co. Litt. 365; Terms De La Ley. tit *Guaranty*; Toml. L. D. art. Rebutter.

This principle has been applied to all suits brought by persons bound by the warranty or estoppel, against the grantee, or his heirs or assigns; so as to give the grantee, and those claiming under him, the same right to the premises as if the subsequently acquired title, or interest therein, had been actually vested in the grantor at the time of the original conveyance from him with warranty; where the covenant of warranty was in full force at the time when such subsequent title was acquired by the grantor. Ib. Vide 14 John. Rep. 193; 6 Watts, 64; 13 Pick. 119.

And, where an estoppel runs with the land, it operates upon the title so as actually to alter the interest in it, in the hands of the heirs or assigns of the person bound by the estoppel, as well as in the hands of such person himself. Ib.

As a covenant of warranty runs with the land, so as to give the heirs and assigns of the grantee the benefit of the estoppel, as against the warrantor, it runs with the subsequently acquired interest of the warrantor, in the hands of the heirs and assigns of the latter; so as to bind that interest by the estoppel, as against any person claiming the same under him, in the post. Ib. Vide 7 Greenl. Rep. 96; 3 Pick. Rep. 52; 7 Conn. Rep. 214; 4 Dev. & Batt. 42; 9 Wend. Rep. 209; Am. Ch. Dig., pp. 98, 99, 100, Nos. 1 to 13, *inclusive*; ib. Nos. 16 to 30, *inclusive*.

ascertain what the rents are which the deed indorsed upon it professes to grant and release to the lessee. Besides, the the deed of grant and release is so attached to the lease, that the one cannot be produced without the other. This recital, then, cannot estop the plaintiff from alleging the lease to be void; because the lease itself is produced, and bears on the face of it the evidence of its own nullity; and, on the principle of the cases from Coke and Comyn, the truth appearing by the same record which contains the recital of its validity, may be alleged notwithstanding the recital. But, again, the defendant himself produces the lease he would prove by the recital; and if the plaintiff, under the circumstances and in the absence of the lease itself, would be estopped from gainsaying its existence or controverting its validity by the general recital of it as a valid lease, in the deed indorsed upon it, the matter would be set at large, and the case opened to all just objections, by the introduction of it by the defendant as evidence in the cause. I may add that the deed is executed by Clarke in his own right, and the lease as attorney for the trustees; and that the plaintiff in the ejectment claims under Clarke as trustee, under the act of the legislature, and not in his own right; circumstances which, of themselves, might preclude the application of estoppel. *But I rely on the answer already given as conclusive; and hold that the recital in the deed cannot estop the plaintiff from alleging the lease to be void, nor in any respect confirm it.

But it is urged that the defect in the lease proceeded from the mistake and fault of Clarke in executing the power delegated to him by the first letter of attorney executed by all the trustees, and conferring upon him an effectual authority to make a valid lease; and that, having received consideration for the lease, he would be compelled to rectify the mistake, and supply the defect.

If the objection was a defective execution of the power by the attorney, equity, in regard to the consideration, might compel the parties to supply the defect. But the remedy, in that case, would be in equity; and the defective lease would be inoperative at law, and must yield to

*Margin notes:*

ALBANY, Dec. 1826.

Sinclair v. Jackson.

*Semb.* that an estoppel of one as to a previous deed, by a recital of it in a subsequent one, is only where both deeds are in the same right, not where he executes one in his own, and the other in another's right.

[*588]

Though equity will supply the defect in the execution of a power, yet a right cannot, therefore, be set up under it at law.

the legal title acquired by the purchaser under the decree of sale on the foreclosure of the mortgage. Sinclair, though in possession, and entitled to a lease, could not set up that equitable title in an ejectment as a bar to a recovery; but

*The remedy is in a court of equity.*

must resort to a court of equity for an injunction to protect him in his possession.

*A mortgage and master's deed on foreclosure, being absolute on their face, parol evidence cannot be given to show that they were taken subject to a lease; such evidence being a contradiction of the deeds.*

Nor was it legally available to the defendant, for his defense to the ejectment, to show that the mortgage was taken subject to the lease, or that the master's sale was with knowledge of the lease, and subject thereto; for the evidence to show the facts being parol, and in contradiction to the terms of the mortgage and the master's deed, was incompetent and inadmissable; and, if admitted, would not comfirm the lease, or render it valid; for, being absolutely void, it was incapable of confirmation at law.

*Nor would such a circumstance, if properly appearing, operate to confirm a void lease.*

If the acts or admissions of the parties to the mortgage, or the circumstances attending the sale, or the notice chargeable upon the purchaser, of the claims of the defendant gave him any rights as against the plaintiff below, those rights are of equitable cognizance, and cannot prevail against the legal estate of the plaintiff in ejectment.

*A lease merely void is incapable of confirmation at law.*

My opinion is, that the judgment of the S. C. was correct, and ought to be affirmed.

*Per totam Curiam.*                    Judgment affirmed.