## Case No. 2,260.

### BUXTON v. BOWEN.

[2 Woodb. & M. 365.][1]

Circuit Court, D. Rhode Island. Nov. Term, 1846.

ESTATES—EFFECT OF PARTITION BETWEEN TENANT IN TAIL AND TENANT IN FEE.

Where A. was tenant in tail of one undivided half of a tract of land under a will, and B. ten-

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

ant in fee of the other half, and a partition is made between them, and mutual releases signed, it binds only during the life of A.; and when C., the heir in tail, after the death of A., sues for the tract, or a part of it, he is entitled to recover an undivided half, in it. Those holding under B. may claim his original half, as the conveyance to B. becoming void on the death of A., the release by B. should also be void as resting on the other for its consideration.—Semble.

This was a writ of entry [by Luther Buxton] to recover [from Coomer Bowen] a tract of land situated in Smithfield in this state. A trial was had here on the general issue at June term, 1845, and a verdict taken for the demandant, subject to be set aside or amended, as agreed in the statement of facts, made and argued at June term, 1846.

Mr. Daniels, for demandant.
Mr. Robertson, for tenant.

WOODBURY, Circuit Justice. The original owner of the premises under whom both parties claim, was Benjamin Buxton. It seems to be conceded, that an interest in them passed under his will, amounting to an estate in tail to his son John, and to his son James an estate in fee, held in common and undivided. On the 6th of December, 1783, these sons undertook, by a deed of partition, to divide the premises equally between them; and released to each other all interest in the portion each was not to retain. Under that partition the land demanded being the share assigned to him, was occupied by John during John's life, which terminated in 1839. Such a partition deed could, of course, convey legally to James no more than John owned, which was only his life estate. Gregg v. Lessee of Sayre, 8 Pet. [33 U. S.] 252; Sinclair v. Jackson, 8 Cow. 543. It could not bind his heirs in tail, except so far as they might afterwards ratify it (4 Dru. & War. 79), of which ratification by the demandant there is no proof, beyond bringing this action, and that will soon be considered. Had the laws of Rhode Island compelled a partition, and carried it into effect so as to bind the heirs in tail, the case would be different. But this partition was voluntary, and by an act in pais of the parties, and of course neither could convey or release any more interest than he possessed. It would estop parties to it and privies, but not others. Jackson v. Hasbrouck, 3 Johns. 331.

After John's death, his son Luther Buxton, the demandant, was entitled to the whole estate in tail, demised by Benjamin Buxton, and which had descended to him in the whole premises, and which was an undivided half; and unless he pleased to confirm or ratify during his life the partition which had been made, could properly recover an undivided share in any part of those premises occupied by another. Massy v. Batwell, 4 Dru. & War. 79. Has he ratified it in any way so as to be able to recover for the whole portion as divided and released to his father? or only an undivided half? That is the important question. In discussing it at the bar,

the fact that his brother James owned a fee in half of the land, and not a life estate, seems not to have attached to it sufficient importance. But as before named such is the case, the demise to James of this land being "I will that my son James Buxton, his heirs and assigns, have the other half of my estate." The release by James, therefore, if held valid, would pass to John an estate in fee in half the premises, including those demanded, and he would own by the will an estate in tail in the other half, and both of these would probably, prima facie, have justified his claim in recovering against a stranger or the releasor in that deed, the whole tract apportioned to him. But after his death, half being in tail, would descend to the heir in tail, and the other half, being a fee, to his heirs generally; and one of those heirs, like the plaintiff, unless sole heir, which is not stated in this case, would not, had there been no sales by John, be entitled to recover the whole, but merely half if heir in tail and only a ratio with others, if an heir with them in fee. In this case, however, before his death, John (Feb. 7, 1792) conveyed all these premises in fee to M. Holbrook and others, under whom the tenant claims; and hence if the release to John by James for half in fee was valid, the title to that one half vested in Holbrook; and the plaintiff can recover only the other half, if heir in tail, and if an heir in fee, nothing, as his father had parted with it. These views are conclusive against the validity of the release by the father, as respects the demandant, after the father's death, for the father had no interests over or rights in this property beyond his life, as well as conclusive against the propriety of holding, that he bringing this action for the whole part divided for by John, ratifies the release, or should be considered as doing it. Because by such a construction he would probably lose forever the undivided half of that portion, obtained in fee from James. Nothing could prevent this conclusion except holding, that the release of James of all his interest in that portion which was a fee, conveyed in law, or could be considered as conveying an estate in tail. Such a construction would probably carry out the real meaning of the parties, and that is to be attempted, whenever justified by sound principle. But they have not used any legal words, suitable to enforce such a meaning; and it would be unjust to James and his heirs, to hold that he conveyed either a fee or an estate in tail, indefeasible, when on his part he received in return for it, not an estate in fee, as he probably expected, or even an estate in tail in the portion conveyed to him, but merely an estate during John's life, as that was all which John possessed the power to convey. 5 Mass. 64; 8 Cow. 543.

The nearest justice of the case, then, in respect to all parties, and the only course that can be sustained by legal principles, is to hold, that individuals situated like these, one with an estate in tail and one with an estate in fee, cannot, by a mere voluntary deed of release, make a partition, which shall bind others than themselves, or themselves, except during the life of the then tenant in tail. After his death, all interest obtained under the release from him ceases. Then of course, as in common deeds of exchange, the interest should in any equitable view cease in the other party, in order to make the operation of the law mutual and just, and because the consideration for the release by James terminates whenever the estate ends, which John transferred to him. See cases of deeds of exchange, which are very technical, and apply here only by analogy and their justice. Co. Litt. 50b; Provost of Eton v. Bishop of Winchester, 3 Wils. 490. So chancery will rescind in exchanges if tail on one side fails. 3 T. B. Mon. 56. Whether in this mutual release such result would follow, it is not necessary to decide here, as it is enough to say here, that the demandant is not barred, in law, as to half, whether James's rights are thus restored or not. By new releases the parties might, during this demandant's life, continue the partition till his death, if they wish. But they are not very likely to execute these, and have not done it. Then, and then only, could the demandant oust the tenants of the whole, who honestly and legally are entitled to all James's interest in the premises, viz. a fee in an undivided half, and a life estate in the other half, as long as John lived, who had released to James. But John, owning only an estate for life in half, he of course could rightfully convey no more, and it is now ended; and Luther, the demandant, being now possessed of the entailed interest, can recover, in this case, only the undivided half of the premises in tail, which were originally devised by Benjamin Buxton.

As it is not necessary to decide more here, we go no further. But it may not be useless to add, that this conclusion will probably enable James, and those entitled under him, to recover his undivided half in fee of the whole land devised, and will thus, as it equitably should, throw back the claimants under both John and James to the position in which they stood before any attempt to make a partition. But if this should not be the case, those claiming under James's title or interest, and not able to get it from John or those holding under him, without a resort to law, may perhaps find redress in John's covenants in his deed. He undertook to convey a fee, when he owned only a life estate, and the value of the difference may well be regarded as a proper charge on his estate or his heirs, who may hold sufficient to answer the demand. It is gratifying to be informed, that in Buxton v. Inhabitants of Uxbridge, Worcester county, April, 1846, the supreme court of Massachusetts has come to a like conclusion as to the rights of this de-

mandant in relation to a part of this tract of land. But the reasons assigned for it have not been seen, though they are understood in some respects to differ from mine. See Buxton v. Inhabitants of Uxbridge, 10 Metc. [Mass.] 87. The case of Bradley v. Fuller, 23 Pick. 1, has been cited in support of such a partition; but it will be seen on a scrutiny, that there the interest of both parties were of a like character, and thus changed the whole nature and operation of the releases.

Let judgment be entered for the demandant for an undivided half in tail of the premises.

NOTE [from original report]. If tenant in tail convey a fee simple, it is not void, but voidable; and if the heir do not enter to defeat it, but apparently confirms it, the title is good in grantee. Massy v. Batwell, 4 Dru. & War. 79 (Irish chancery), before Lord Chancellor Sugden.