Hannon v. Christopher.

| 34 | 459 |
| 64 | 513 |

## BRIDGET HANNON

*v.*

## THOMAS V. J. CHRISTOPHER.

1. A devise to three persons, "to the survivor of them, and to the heirs and assigns of such survivor," creates a joint estate for life in the three, with contingent remainder in fee to the survivor.

2. Whether a contingent or an after-acquired interest will pass by estoppel, as the result of a conveyance by deed of bargain and sale, without covenants, depends upon whether it was the intention of the parties to convey it; and whenever it clearly appears that such was their intention, it is the duty of the court to adjudge an estoppel, in order that the deed may be carried into effect according to the minds of the parties.

3. Equity recognizes no rule as binding which will constrain it to do injustice.

4. Whether the appearance of the truth on the face of the instrument will defeat an estoppel or not, must depend upon the fact whether it is so expressed that it can be readily seen and understood by the person who ought to be influenced by it, or in manner so technical or obscure that it was not seen nor understood by such person, who dealt with the party sought to be estopped, as though the words on which the estoppel is founded expressed the whole truth. .

5. Where lands are conveyed by deed of bargain and sale simply, which ordinarily operates only to transfer vested interests, but it distinctly appears on the face of the deed that it was intended to transfer any future interest which the grantor might acquire, equity will treat the deed as an executory agreement to convey, and compel the grantor to convey the subsequently acquired interest.

On motion to dissolve injunction, heard on bill and answer.

Hannon v. Christopher.

*Mr. S. B. Ransom,* for motion.

*Mr. Peter Bentley, contra.*

VAN FLEET, V. C.

The defendant seeks to have an injunction, which has been granted against the further prosecution of an action of eject-ment, dissolved. The facts on which the motion must be decided are undisputed. They show that Mary Vermilya died seized in fee of the lands in dispute, in 1824, leaving a will, in which she made the following devise :

" And also I give and devise all my real estate, whatsoever and wheresover, unto my niece, Mary Ann Jarvis, my mother, Sarah Vermilya, and my brother, Thomas Vermilya, to the survivor of them, and to the heirs and assigns of such survivor."

The lands in dispute passed by this devise. The ·devisees ·died in the following order : First, Sarah Vermilya, March 30th, 1834; second, Mary Ann Jarvis, January 29th, 1846, and lastly, Thomas Vermilya, in September, 1853. Mary Ann Jarvis married Thomas S. Christopher January 9th, 1840, and had by him two children, viz., the defendant (Thomas V. J. Christopher) and James J. V. Christopher. Thomas Vermilya, shortly after the death of his mother, Sarah Vermilya, and on the 10th of October, 1834, conveyed the lands in dispute to Mary Ann Jarvis, by deed containing the following recitals :

" Whereas, Mary Vermilya, late of the city of New York, deceased, was in her lifetime seized in fee simple of and in certain lots of land, hereinafter par-ticularly described ; and whereas, the said Mary Vermilya did, in and·by her will, by her duly made to pass real estate, bearing date September 2d, 1824, give and devise all her real estate, whatsoever and wheresoever, unto her niece, Mary Ann Jarvis, her mother, Sarah Vermilya, and her brother, Thomas Vermilya, to the survivor of them, and to the heirs and assigns of such survivor; and whereas, Sarah Vermilya, my mother, is now dead, and the said property is now vested in me, the said Thomas Vermilya, and Mary Ann Jarvis, in fee simple, and I, the said Thomas Vermilya, being desirous of vesting the whole in my niece, Mary Ann Jarvis, now this indenture wit-nesseth," &c.

The deed then, in consideration of the sum of $100, grants, bargains and sells unto Mary Ann Jarvis, and to her heirs and assigns, all the grantor's estate, right, title and interest whatsoever, under the will of Mary Vermilya or otherwise, of, in and to the lands therein described. The deed is without covenants, but the *habendum* declares that the grantee, and her heirs and assigns, shall have and hold the lands; to her and their use, absolutely, forever.

On the 6th of September, 1844, Mary Ann Jarvis, together with her husband, Thomas S. Christopher, by deed containing covenants of general warranty, conveyed the lands in dispute to John Arbuckle. Since then, in virtue of several mesne conveyances, they have become vested in the complainant. No dispute is raised respecting the regularity of the complainant's title ; the objection to her case goes deeper ; it is denied that the source from which she derived her title could grant a fee.

Thomas Vermilya, the survivor of the three devisees, died, as already stated, in September, 1853. He left a will, by which he gave his whole estate to the defendant (Thomas V. J. Christopher) and to the defendant's brother, James J. V. Christopher, and to the defendant's father, Thomas S. Christopher. The defendant's father and brother both subsequently died intestate, and without leaving any other relative as near in blood as he ; consequently, the whole estate of which Thomas Vermilya was seized at the time of his death is now vested in the defendant. The defendant, under a claim that the deed from Thomas Vermilya to Mary Ann Jarvis passed only a life estate, and that the fee is now vested in him, has brought an action of ejectment against one of the complainant's tenants. That suit has been enjoined at the instance of the complainant, and the question now before the court is, whether or not, on the facts first narrated, the defendant is entitled to have that injunction dissolved. The main topic of debate presented by the case is, whether or not the deed of 1834, made by Thomas to Mary Ann, should be adjudged to have created an estoppel, which should debar Thomas, and those standing in his rights, from asserting a claim to the estate subsequently cast upon him by the death of Mary

Ann. At the time Thomas made that deed, it is admitted he was seized of only a life estate, with a possibility that the contingent remainder in fee might vest in him as survivor. The legal construction of the devise is, in my judgment, entirely clear. The three devisees took a joint estate for life, with contingent remainder in fee to the survivor. Under our system of real property law, neither words of inheritance nor perpetuity are necessary to pass a fee by will. By the common law they were, but a devise to A and his assigns forever, or to A and his heir, would pass a fee. *4 Com. Dig. 161, tit. "Estate by Devise" n. (4).* So a devise to one *et sanguini suo* would pass an estate of like quantity. *Gilbert on Dev. 19.* By a statute passed in 1784, it is enacted that all devises in which the words heirs and assigns, or heirs and assigns forever, are omitted, and no expressions are contained whereby it shall appear that such devise was intended to convey an estate for life only, shall be construed, deemed and adjudged, in all courts of law and equity, to convey an estate in fee simple in as full a manner as if the lands had been given to the devisee, and to his heirs and assigns forever. *Rev. 300 § 13.* Hence, as the law stands, a devise to A, *simpliciter,* in which nothing appears indicating a purpose to give him only a life estate, will create a fee. In view of the provisions of this statute, it is clear that if the devise in this case had been to the three, and to the survivor, without more, the survivor would have taken the fee, and such, obviously, in view of the terms of this devise, must have been the construction it would have received according to the common law, and in the absence of a statute like that just cited. A devise to two, and the survivor of them, and the heirs of such survivor, gives them a joint estate for life only, with contingent remainder in fee to the survivor. *2 Fearne on Rem. 66 § 187 a ; Vick* v. *Edwards, 3 P. Wms. 372.*

Thomas Vermilya, then, according to the legal construction of this devise, became seized of the fee of the lands in dispute on the death of his niece, Mary Ann Christopher. The defendant stands in his place, with no greater rights or higher equity. He is simply the donee of Thomas, and the case must

Hannon *v.* Christopher.

be decided in the same manner that it would be if Thomas were the person seeking to dissolve this injunction. The recitals of the deed made by Thomas to Mary Ann show, beyond all question, that the estate about which they were dealing, and which Thomas intended to convey, and Mary Ann expected to get, was the fee. It is incontrovertible that the decisive and controlling representation of the deed is that in which it is said, that "*the said property is now vested in me, Thomas Vermilya, and my niece, Mary Ann Jarvis, in fee simple.*" They manifestly dealt on the basis that they were the owners, absolutely, of as great and as perfect an estate as it is possible to hold in lands.

Do the recitals of this deed create an estoppel against Thomas?

There is an apparent conflict in the adjudications upon the question whether a deed of bargain and sale, without warranty of title, but containing recitals showing that the parties evidently dealt under a belief that the grantor was seized of a greater estate in the lands than he actually had at the time of its execution, will bind or transfer, by estoppel, a contingent or subsequently acquired estate. Some seem to hold that a grant in this form is utterly inefficacious to pass an estate not yet vested, and can only operate as a conclusion between the parties and their privies on an estate vested at the time of its execution; while others, resting upon a much more liberal and just basis, hold that whether a contingent or an after-acquired interest will pass by estoppel, as the result of a conveyance in this form, depends entirely upon whether it was the intention of the parties to convey it, and that whenever it clearly appears that such was their intention, it is the duty of the court to adjudge an estoppel, in order that the deed may be carried into effect according to the minds of the parties. No review of the learning on this subject will be attempted. The limits of a judicial opinion are neither sufficient nor adapted to such an undertaking. The cases will be found collected in the American notes to the Duchess of Kingston's case, *2 Smith's L. C. 623, et seq.*

In my opinion, the latter view is the correct one. It commends itself to my sense of justice as being in entire accord with certain fundamental doctrines of the law, and it is obviously

better adapted to promote and further justice than its opposite. It appears to be a natural deduction from, if not an actual exemplification of, that great principle which declares that in searching for the meaning of an instrument, that interpretation shall prevail which is "as near the minds and apparent intent of the parties as it possibly may be, and the law will permit." *Shep. Touch. ch. V. p. 85.* And "if it cannot operate in one form, it shall operate in that which, by law, will effectuate the intention of the parties." *Goodtitle* v. *Bailey, Cowp. 597.*

The most accurate and lucid statement of the essentials of such an estoppel that has come under my observation, is that given by Mr. Justice Nelson, in pronouncing the opinion of the supreme court of the United States, in the case of *Van Rensselaer* v. *Kearney, 11 How. 297, 301,* in which he says:

> "That if the deed bears on its face evidence that the grantor intended to convey, and the grantee expected to become invested with an estate of a particular description or quality, and that the bargain proceeded upon that footing between the parties, then, although it may not contain any covenants of title, in the technical sense of the term, still, the legal operation and effect of the instrument will be as binding upon the grantor and those claiming under him, in respect to the estate thus described, as if a formal covenant to that effect had been inserted, at least so far as to estop them from ever afterward denying that he was seized of the particular estate at the time of the conveyance."

Then, after a careful examination of several previous adjudications, both by the courts of England and of this country, he further says:

> "The principle deducible from the authorities seems to be that whatever may be the form and nature of the conveyance to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seized or possessed of a particular estate in the premises, and which estate the deed purports to convey, * * * the grantor, and all persons in privity with him, shall be estopped from ever afterwards denying that he was so seized and possessed at the time he made the conveyance. The estoppel works upon the estate, and binds an after-acquired title as between the parties and privies. The reason is, that the estate thus affirmed to be in the party at the time of the conveyance, must necessarily have influenced the grantee in making the purchase, and hence the grantor and those in privity with him, in good faith and fair dealing, should be forever thereafter precluded from gainsaying it."

Hannon *v.* Christopher.

The rule thus established was subsequently affirmed in *French* v. *Spencer*, *21 How. 228*. Chancellor Walworth, prior to the decision of Van Rensselaer *v.* Kearney, had enunciated the same doctrine, substantially, in giving his opinion, as a judge of the court of errors of New York, in *Jackson* v. *Waldron*, *13 Wend. 178;* and his formula of the rule was subsequently quoted and approved in *Fitzhugh* v. *Tyler*, *9 B. Mon. 559.* The learned editor of the American notes to the Duchess of Kingston's case, states that the fair result of the more recent cases would seem to be, that whenever the terms of the deed, or of the covenants which it contains, clearly show that it was meant to convey an absolute and indefeasible title, and not merely that which the grantor had at the time, it will bind and pass every estate or interest which may vest in him subsequent to its execution, whether the warranty which it contains be general or special, and although it may contain no warranty whatever. *2 Smith's L. C. 636.* In the language of Mr. Justice Nelson, it is clear that this doctrine is founded upon the highest principles of morality, and recommends itself to the justice and common sense of every one.

But for the presence of another fact in the recitals of this deed, viz., a correct recital of the terms of the devise, I think it might very properly be declared, at this point, without further consideration, that the defendant is estopped. The presence of this fact makes the recitals, in their legal essentials, flatly contradictory. The grantor says that he and his grantee hold the lands in fee; but in stating the facts from which this conclusion is deduced, he shows, at least to the professional mind, that his deduction is entirely unwarranted. Now, it cannot be doubted that it was originally held that there could be no estoppel by deed where the truth appeared on the face of the instrument. *4 Com. Dig. 205, tit. "Estoppel" (E 2); Sinclair* v. *Jackson, 8 Cow. 543; Pelletreau* v. *Jackson, 11 Wend. 111; Jefferys* v. *Bucknell, 2 Barn. & Ad. 278; Wolling* v. *Camp, 4 Harr. 148.* But this rule, like all other legal rules, was formulated for the doing of justice, and when it cannot be used for that purpose, but its enforcement will lead to injustice or wrong, it should be disregarded. Equity

recognizes no rule as binding which will constrain it to do injus-
tice. Recently this rule has been repudiated by three of the
superior courts of England—chancery, exchequer chamber and
queen's bench. In the court of chancery, Lord Chelmsford
declared that the appearance of the truth on the face of the deed
constituted a reason rather why the party should be held to be
estopped, than that he should be permitted to gainsay or disprove
what he had previously admitted or alleged. I quote his words:

"It appears to me that the circumstance of the truth of the case appearing
upon the deed, is a reason why the agreement of the parties, which it embodies,
should be carried out, either by giving effect to their intentions in the manner
which they have prescribed, or, by way of estoppel, to prevent their denying
the right to do the acts which they have authorized to be done." *Jolly* v. *Ar-
buthnot, 4 De G. & J. 224.*

And Chief-Baron Kelly, in giving his opinion in *Morton* v.
*Woods, L. R. (4 Q. B.) 293,* said that if there were any decisions
or *dicta* which held that where the truth appears there can be no
estoppel, that doctrine must now be considered overruled; and
he thought it had been rightly overruled. The same case, when
before the court of queen's bench, was decided in the same way.
*L. R. (3 Q. B.) 658.*

Now it cannot be denied that the truth appears on the face of
the deed under consideration, but it is also entirely clear that the
parties dealt with each other as though it did not appear there.
It must also be admitted that what is false, as well as what is
true, is declared on the face of this instrument, and that the par-
ties dealt with each other, obviously, understanding that truth
and falsehood, in this instance, were consistent. The truth was
obscurely stated, and the falsehood plainly, and they dealt, con-
sequently, on the basis of the falsehood. In this condition of
affairs, I think it would be a manifest misapplication of legal
principles to say that the truth bars the estoppel. The true rule
upon this subject I take to be this: Whether the appearance of
the truth on the face of the instrument will defeat an estoppel or
not, must altogether depend upon the fact whether it is so ex-
pressed that it can be readily seen and understood by the person

who ought to be influenced by it, or in manner so technical or obscure that, although it must be admitted it appears in the instrument, yet it is certain it was not seen nor understood by the person who should have been influenced by it, but that he dealt with the party sought to be estopped as though the words on which the estoppel is founded expressed the whole truth.

The great purpose, lying at the foundation of the law of estoppel, is to prevent fraud, either actual or legal. Estoppels are to be used as shields, not as swords. A simple reading of the recitals of this deed can leave no doubt on the mind of any person as to the basis on which the parties dealt. They were dealing with the fee. Thomas intended to grant to Mary Ann the fee simple absolute, and she expected to get it. That was the estate for which she paid her money, and that was the estate Thomas intended to convey to her. Now, if Thomas were here insisting that inasmuch as his deed told both the truth and a falsehood, it was equitable and just that he should be allowed to recover the lands in dispute, in spite of the fact that he had received full compensation for them many years ago, his conduct, according to my notions of legal ethics, would constitute a fraud of the most offensive character. Thomas's donee, in legal principle if not in morals, stands just exactly where Thomas would, if he, instead of the defendant, were now asking for a dissolution of this injunction. My conclusion is that it should be adjudged that the defendant is estopped by the deed of 1834.

But another ground for equitable relief remains to be considered. The complainant contends that, even if it be admitted that Thomas had no interest in the lands, at the date of his conveyance, upon which a deed of bargain and sale could operate, by way of estoppel or otherwise, still, inasmuch as it distinctly appears on the face of his deed that it was intended to convey any future interest which he might acquire, and was not intended to be limited to the interest which he then had, equity will enforce the deed as an executory agreement to convey the subsequently-acquired interest. This contention is founded on the most obvious principles of justice, and is supported by very high authority. The adjudications supporting it will be found collected in 2

*Smith's L. C. 641; 2 Story's Eq. Jur.* § *1040 c;* and *2 Spence's Eq. Jur. 852.* Chief-Justice Tilghman, in *McWilliams* v. *Nisly,* *2 Serg. &. R. 509, 515,* said :

"Equity will enforce a covenant to convey an estate whenever it shall be acquired by the covenantor, and the case is not the less strong where there is an absolute conveyance."

This ground of relief is, unquestionably, a matter of which a court of equity only can take cognizance. While I am decided in my opinion that the deed of Thomas to Mary Ann contains matter which creates an estoppel against Thomas and all who may claim under him as heirs or devisees, still, so far as I am aware, the question whether a deed in this form will create an estoppel or not is, as a matter of law, undecided in this state. To compel the complainant, therefore, to litigate the question of estoppel in the court where the action of ejectment is pending, is to send her to a tribunal which it is clear is incompetent to give her one measure of relief to which she seems entitled. If the injunction should be dissolved, and it should then turn out that the court in which the action of ejectment is pending should be of opinion that the deed created no estoppel, the complainant would be compelled either to yield possession of the land, or return here in order that her additional claim to relief might be determined.

For these reasons I think the defendant's motion should be denied.